**KNOR, Appellee,**

**v.**

**PARKING COMPANY OF AMERICA, Appellant.**

[Cite as *Knor v. Parking Co. of Am.* (1991), 73 Ohio App.3d 177.]

Court of Appeals of Ohio,
Hamilton County.

No. C–890649.

Decided April 17, 1991.

David M. Green, Charles D. Lowe and John F. Holcomb, for appellee.
Lindhorst & Dreidame and James F. Brockman, for appellant.

*Per Curiam.*

On November 14, 1985, plaintiff-appellee, Julie Ann Knor, brought an action against defendant-appellant, Parking Company of America, alleging personal injuries including permanent psychological damages. The plaintiff claimed that her injuries resulted from the defendant's failure to provide adequate security in its parking lots after advertising such security. After filing its answer, the defendant moved for and was denied summary judgment. On August 1, 1989, following a jury trial in the court of common pleas, a judgment was entered for the plaintiff in the amount of $2,000,000.

Thereafter, the defendant filed motions for remittitur, judgment notwithstanding the verdict, and a new trial. The plaintiff filed a motion for prejudgment interest. All motions were denied by the trial court.

In this appeal, the defendant asserts eleven assignments of error. We find these assignments to be without merit and, therefore, affirm the judgment of the trial court.

The plaintiff was a twenty-one-year-old college student who, on July 11, 1985, the day of the incident, was leaving her part-time job at Burke Marketing in downtown Cincinnati. At 5:15 p.m., the plaintiff entered the defendant's parking lot to go to her car. As she tried to enter her car, she was abducted at knife point by two escaped convicts, who drove her to St. Louis, Missouri. Along the way, while she was forced to stay in the trunk of the car for a period of time, she overheard her kidnappers discuss how they planned to kill her. For most of the trip, she had to sit on her kidnappers' laps while they fondled her and ran a knife across her throat and repeatedly told her she would die. In addition, she was periodically forced to perform various sexual acts. The car was abandoned at Busch Stadium in St. Louis. The plaintiff was eventually able to regain control of the car and escaped. She was aided by St. Louis police and returned to Cincinnati.

The defendant owns and operates twenty parking lots in the Cincinnati area. The lot where the incident occurred is the only one in which the defendant advertised security. Specifically, several large signs were posted around the entrances which read, "Security Guard on Duty 6:00 a.m.—6:00 p.m." The plaintiff asserted that she chose this particular lot for parking because of the defendant's claims of security.

The security consisted of two retired men who each worked a six-hour shift. They received no actual training but were told to stay in the elevated security booth and watch for vandalism and broken glass. The guards carried no radio, nightstick, or mace. There was, however, a telephone in the booth.

There was evidence presented at the trial that the two convicts who abducted the plaintiff had arrived in Cincinnati the day before the incident. They spent the night in a burned-out building which bordered one side of the parking lot. Between their arrival and the abduction, the two convicts claimed that they walked through the parking lot in question four times, going from car to car, looking for an unlocked car to steal. This activity apparently went undetected over the two-day period.

At the trial, the plaintiff testified that she was unable to remember many of the details of her abduction. The court permitted her psychiatrist, Dr. Diane Vickery, to testify as to these events based on the history given to her by the plaintiff shortly after the incident.

Within three weeks following the incident, the plaintiff began seeing Dr. Vickery to help her cope with her reaction to the events surrounding her kidnapping. Dr. Vickery testified that the plaintiff told her that she felt empty inside and that she had lost control of her life. She constantly feared that the kidnappers would come back for her again.

Dr. Vickery explained that the plaintiff frequently had episodes where she would superimpose her abductors' faces on the faces of other people and she would panic. This would happen without warning and terrified her. The plaintiff was very uncomfortable being in her car. She said she felt dirty there and would occasionally become frantic while driving. The smell of the cigarettes and beer that her abductors used lingered in the car, and the smell would trigger her memory of the incident and cause her to feel trapped in her car.

The plaintiff had flashbacks which, according to Dr. Vickery, felt to the plaintiff as if she was going through the experience again. The plaintiff complained of sleep problems and frequent crying spells. She also got abnormally upset and depressed if she heard about hostage taking because she would identify so strongly with the victims. She told Dr. Vickery that she was contemplating suicide. Dr. Vickery prescribed antianxiety and sleeping medications for her.

Dr. Vickery also testified that the plaintiff had married but that there had been no physical contact since the honeymoon; that the plaintiff was afraid of any physical closeness including being in crowds; that she felt abandoned by God and untrusting of people; and that she continued to have nightmares and hallucinations.

Dr. Vickery concluded that the plaintiff suffered from posttraumatic stress disorder and clinical depression. The doctor indicated that the plaintiff appeared to be undergoing a much higher level of distress than what she had experienced earlier in her treatment. She told the court that she believed the

plaintiff's condition was permanent and expected that many of her symptoms would continue indefinitely.

Dr. Vickery also explained that the apparent loss of memory concerning the kidnapping was very common in posttraumatic stress disorder. She added that the plaintiff continued to feel quite fearful and to have panic attacks, although she did not remember all of the events causing her to have those feelings. The trial court excused the plaintiff from the courtroom during Dr. Vickery's testimony upon the doctor's recommendation. Dr. Vickery believed that listening to an account of the incident would be too traumatic for the plaintiff and would cause her pain for which there really was no remedy.

■ Grouping the evidentiary issues raised by the defendant, we begin with the first and fifth assignments of error, which concern the admission of certain evidence under Evid.R. 803 as exceptions to the hearsay rule. The first assignment challenges the admission of certain police reports concerning criminal activities on and around the defendant's parking lot. The defendant argues that these reports were improperly admitted under Evid.R. 803(8)(b) because they were not the firsthand observations of the officers making the reports, and the incidents described in the reports were too dissimilar to the kidnapping incident at issue in the present case.

After reviewing the record concerning the admission of the police reports into evidence, we conclude that the police reports are not hearsay. The reports were not offered into evidence to prove the truth of the matter asserted, *i.e.*, that the victims in the reports were *actually* robbed or assaulted. Rather, the plaintiff was trying to prove a fact which was an issue in the case, that the incidence of reported crime in and around the defendant's parking lot was high and that the defendant had notice of that fact. See *Cassidy v. Ohio Pub. Serv. Co.* (1947), 83 Ohio App. 404, 38 O.O. 460, 83 N.E.2d 908. The police reports themselves were offered as evidence of a fact at issue. The particulars of each report were immaterial except to illustrate that incidents involving force had been reported in the same geographical vicinity as the crime against the plaintiff. The admission of the police reports was not improper and we, therefore, overrule the first assignment of error.

■ The defendant's fifth assignment of error asserts that the trial court erred by permitting the plaintiff's medical witness to testify that the plaintiff was sexually abused. The defendant argues that Dr. Vickery became, in effect, a surrogate witness for the plaintiff, who was unable at trial to remember many of the details of her ordeal with her kidnappers.

The notes, from which Dr. Vickery read during her testimony, were part of the history she took from the plaintiff prior to diagnosis and treatment. Dr.

Vickery obtained the plaintiff's history on July 29, 1985, just over two weeks following the incident. At that time, the plaintiff was able to recount the details of her abduction clearly. Pursuant to Evid.R. 803(4), statements made for the purposes of medical diagnosis and treatment fall under an exception to the hearsay rule. The rule specifically permits statements describing "the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment."

The plaintiff's experience with her abductors, and particularly the sexual molestations she suffered at their hands, was, according to Dr. Vickery, clearly the cause or source of her subsequent medical and psychological problems. Dr. Vickery elicited the plaintiff's account of the sexual abuse in order to diagnose and treat her properly. Accordingly, the trial court did not err by admitting the statements read by Dr. Vickery. The defendant's fifth assignment of error is overruled.

The sixth assignment of error alleges that it was error for the trial court to permit the plaintiff's experts to render certain opinions. The defendant takes issue with the testimony of Paul Freeland, a retired Cincinnati police officer with thirty-one years' experience, and Anthony Potter, a security and safety consultant.

The plaintiff asked Freeland whether he believed that the area in which the parking lot is located was a high-crime area. The court sustained the defendant's objection to the question. The plaintiff then posed the question hypothetically, asking whether a parking lot, having a burned-out building frequented by vagrants and bums on one side and a bus terminal on another side, would be particularly vulnerable to crime in a downtown area. Freeland stated that a great deal of observation and attention should have been paid to the lot to reduce the hazards that the neighboring structure posed to the parking lot. The defendant argues that this opinion creates a higher duty than that required under Ohio law. Additionally, the defendant asserts that this opinion, as to the lot's vulnerability to crime, is not within any type of specialized knowledge as set forth in Evid.R. 702.

The defendant also objected to Potter's testimony. According to the defendant, his opinion was not based on facts in evidence as required by Evid.R. 703.

First of all, Evid.R. 702 states that a qualified expert may testify if specialized knowledge will aid the trier of fact to understand the evidence or determine a fact in issue. The facts or data used by the expert in formulating his opinion must be perceived by him or admitted into evidence at the hearing. Evid.R. 703. In this appeal, the defendant does not dispute the qualifications of the experts.

 Both of the plaintiff's experts testified about subjects within their areas of expertise. The only other requirement of Evid.R. 702 is that the testimony of the expert "assist the trier of fact" in coming to a conclusion about facts or evidence. This is not a difficult standard to meet and is clearly met here.

The defendant's arguments concerning the specific testimony of these two experts go more to the weight of the evidence and the credibility of the witnesses and pose issues that are primarily for the trier of fact to determine. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. The defendant has given us no reason to question the trial court's assessment of the witnesses.

 Additionally, the defendant's conclusion that Potter's opinion concerning the adequacy of the security measures employed by the defendant in the lot where the incident occurred is "pure conjecture" is unfounded. Potter personally visited the lot and noted what he termed its various "vulnerabilities" to crime. He also reviewed the police reports generated in the general vicinity of the lot. His conclusion, that the security measures provided by the defendant, in view of the lot's high vulnerability to criminal activity, were inadequate, was based upon data and facts which he perceived, as required by Evid.R. 703.

Consequently, we hold that the trial court did not err by admitting the testimony of these experts and we overrule the sixth assignment of error.

 In its seventh assignment of error, the defendant argues that the trial court erred by permitting testimony concerning the defendant's financial status. During the trial, the plaintiff asked questions of the defendant's area director concerning the cost of parking in the lot and the estimated cost of implementing various security measures there.

Evid.R. 401 and 402 permit the admission of relevant evidence, which is defined as evidence having any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. We hold that the evidence concerning the money generated by the lot and the cost of furnishing security to the lot was relevant to the defendant's ability to provide adequate security and was, therefore, admissible. We, therefore, overrule the defendant's seventh assignment of error.

The defendant's second assignment of error asserts that the trial court erred by denying the defendant's motions for summary judgment, directed verdict, and judgment notwithstanding the verdict.

To grant a motion for summary judgment, the trial court must determine that no genuine issues of material fact remain to be litigated and that the

moving party is entitled to judgment as a matter of law. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 274. In the case before us, we find a number of factual issues raised which would make the granting of a summary-judgment motion improper.

One two-part issue is whether the defendant should have been on notice that the parking lot was located in a high-crime area, thus making it likely that an incident, such as that occurring to the plaintiff, was reasonably foreseeable. The issues of notice and foreseeability posed factual questions that could only be determined at trial. In addition, the issues of whether the defendant used ordinary care in protecting its patrons after advertising that security was provided and whether any negligence was the proximate cause of the plaintiff's injuries were also questions of fact to be resolved at trial.

Having recited several of the factual issues raised in this action, we conclude that the defendant was not entitled to judgment as a matter of law and that the trial court properly overruled the defendant's motion for summary judgment.

The standard for reviewing motions for a directed verdict and judgment notwithstanding the verdict is essentially the same. Construing the evidence most strongly in favor of the nonmoving party, the court must determine whether reasonable minds must conclude in favor of the moving party. If so, a directed verdict or a judgment notwithstanding the verdict should be granted. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467; *Humphrey v. Dent* (1980), 62 Ohio St.2d 273, 16 O.O.3d 321, 405 N.E.2d 284; *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334.

After reviewing the record and construing the evidence most strongly in the plaintiff's favor, we cannot say that reasonable minds could only come to a conclusion in favor of the defendant. The motions for a directed verdict and judgment notwithstanding the verdict were properly overruled. We, therefore, overrule the defendant's second assignment of error.

The defendant's third and fourth assignments of error allege that the trial court erred by denying its motion for a new trial and a remittitur because the size of the verdict was not supported by the evidence and was the result of passion and prejudice. We do not agree.

A trial court is vested with broad discretion in deciding whether to order a new trial based on excessive or inadequate damages, and a reviewing court cannot reverse the trial court's decision absent an abuse of that discretion. *Jones v. Meinking* (1987), 40 Ohio App.3d 45, 531 N.E.2d 728. The Ohio Supreme Court has stated that an appellate court should hesitate to

grant a remittitur or set aside a jury's verdict, supported by credible evidence, as excessive in the absence of demonstrated passion or prejudice. See *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 543 N.E.2d 464. The trial judge is in the best position to determine whether an award is so excessive that it must be the result of passion or prejudice. *Villella, supra.*

In *Fromson & Davis Co. v. Reider* (1934), 127 Ohio St. 564, 189 N.E. 851, the court held that to determine whether passion and prejudice affected the award of excessive damages, a reviewing court should consider not only the amount of the damages awarded but whether the record discloses that such an award was induced by the admission of incompetent evidence, misconduct by the court or counsel, or any action occurring during the trial which can reasonably be said to have swayed the jury in its determination of the amount of damages. The burden is on the defendant to demonstrate that passion and prejudice played a role in the jury's determination.

Our review of the record in this case discloses no indication that the jury was influenced by passion or prejudice. There was substantial evidence presented concerning the mental, emotional, and physical trauma suffered by the plaintiff during and after the incident of July 11, 1985, as well as the long-term effects she is likely to endure. There was also credible evidence showing that the defendant failed to exercise ordinary care in providing adequate security for the parking lot in question and that this lack of due care was the proximate cause of the plaintiff's injuries. The trial court could reasonably have found that such evidence adequately supported the jury's verdict.

Consequently, we conclude that the trial court did not err by refusing to grant a new trial or a remittitur, and we overrule the defendant's third and fourth assignments of error.

The eighth assignment of error asserts that it was prejudicial error for the trial court to permit the plaintiff to amend her complaint at the close of her case in chief to include a cause of action for breach of contract.

Civ.R. 15(B) specifically allows amendments of pleadings to conform to the evidence. The trial court is given broad discretion to freely allow amendments pursuant to Civ.R. 15. *Spisak v. McDole* (1984), 15 Ohio St.3d 62, 15 OBR 157, 472 N.E.2d 347. Such discretion will not be disturbed absent "gross abuse" by the trial court. *Id.*

The defendant has failed to demonstrate how it was prejudiced or how the trial court abused its discretion by permitting the plaintiff to amend her complaint to include a breach-of-contract claim. Further, since the jury found that the defendant was negligent under a tort theory, the assigned error was

irrelevant to the outcome of the case. Consequently, the defendant's eighth assignment of error is overruled.

The defendant's ninth assignment of error alleges that the trial court erred by failing to fully instruct the jury on the proper measure of damages for breach of contract. A review of the record reveals that the trial court did instruct the jury on the law concerning the theory of implied contract. We hold, however, that any failure of the trial court to instruct the jury on contract damages under these facts is harmless.

A harmless error is one which does not affect the substantial right of the parties. Civ.R. 61; *Leichtamer v. Am. Motors Corp.* (1981), 67 Ohio St.2d 456, 475, 21 O.O.3d 285, 297, 424 N.E.2d 568, 581. An appellate court will not reverse a judgment on the basis of any error that is harmless. Civ.R. 61.

In the case before us, the defendant has not suggested any way in which it was prejudiced by the trial court's failure to instruct the jury on contract damages. In addition, as in the previous alleged error, the jury's determination that the defendant was negligent under a tort theory makes this assigned error immaterial to the final outcome of the case. Accordingly, we overrule the defendant's ninth assignment of error.

In its tenth assignment of error, the defendant asserts that the trial court erred by failing to submit special interrogatories to the jury. The defendant requested an interrogatory concerning whether the plaintiff's kidnapping was foreseeable. Another requested interrogatory addressed the issue of whether the criminal acts of the kidnappers were superseding causes of the plaintiff's injuries. However, the record reveals that the trial court did fully instruct the jury on the issues of foreseeability and superseding cause.

The function of the special interrogatory is to test the verdict. In order to do that, the interrogatory must accurately reflect the applicable law. Under Civ.R. 49(B), interrogatories are submitted to the jury in the form that the court approves. This gives discretion to the trial court "to review and approve the appropriateness and content of proposed interrogatories." *Ragone v. Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St.2d 161, 71 O.O.2d 164, 327 N.E.2d 645. The rule does not demand that the trial judge submit all interrogatories proposed by counsel. If the interrogatories are not based on the evidence or are incomplete, ambiguous or otherwise legally objectionable, the judge is not required to submit them to the jury. *Id.*

This court has previously addressed the issue of jury interrogatories. In *Cincinnati Riverfront Coliseum, Inc. v. Clark Eng. Co.* (Oct. 30, 1985), Hamilton App. Nos. C–840639 and C–840640, unreported, 1985 WL 11516,

affirmed (1986), 28 Ohio St.3d 333, 28 OBR 400, 504 N.E.2d 415, we held that the defendant was prejudiced by the trial court's failure to submit requested interrogatories. However, the record showed that the court refused to even consider the defendant's interrogatories, and that the two interrogatories which were submitted were very general and failed to adequately test the jury's general verdict. That case is very different from the case *sub judice.*

The interrogatories which were submitted to the jury in this case reveal that the jury determined that the defendant had a duty to provide reasonable security to its patrons, that it was negligent in failing to provide such security, and that the defendant's negligence was the proximate cause of the plaintiff's kidnapping and injuries.

If the defendant was negligent in its provision of security, as the jury found, then it was foreseeable that the plaintiff could be injured as a result of that negligence. The plaintiff was the victim of a violent crime which was the type of criminal act that the defendant undertook a duty to protect against when it advertised that a security guard was on duty in its parking lot. It was not unforeseeable that criminals seeking to steal a car would abduct a person entering her car to prevent her from alerting others that her car was being stolen. The defendant cannot now argue that the actions of the kidnappers were a superseding cause of the plaintiff's injuries, when it breached its duty to protect against the very type of criminal act that occurred.

We hold that the trial court did not err by failing to submit two of the defendant's requested interrogatories. The jury was fully instructed on all relevant legal issues including foreseeability and superseding cause, and the answers to the interrogatories which the court did submit demonstrate that the jury properly considered the issue of foreseeability, as applied to these facts, as well as superseding cause. The defendant has failed to demonstrate how the omission of its requested interrogatories prejudiced its case. We, therefore, overrule the defendant's tenth assignment of error.

The defendant's eleventh assignment of error asserts that the trial court erred by denying the defendant's motion for a new trial. The defendant specifically argues that its first, fifth, sixth, seventh, eighth, ninth and tenth assignments of error, when taken individually or as a group, provide the appropriate grounds for ordering a new trial. The defendant also claims that the verdict is against the manifest weight of the evidence.

We have not found that any of the defendant's enumerated assignments of error are well taken. In addition, we hold that the judgment of the trial court was supported by some competent, credible evidence going to all the essential

elements of the case. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. The defendant, therefore, was not entitled to a new trial.

Accordingly, the defendant's eleventh assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

DOAN and GORMAN, JJ., concur.

UTZ, P.J., dissents.

UTZ, Presiding Judge, dissenting.

After an examination of the record of this case, conducted by me independently of that done by my brothers on this panel, I must dissent.

In dissenting, I recognize the strength of the authorities cited by the majority and the clarity of the rationale expressed in their decision. Nevertheless, certain aspects of the evidence give me pause in subscribing to an affirmance of the judgment granted below.

The record, as I see it, presents a case which cried out for a remittitur by the trial court. That court, certainly, had greater latitude than that afforded by laws of a court of review. If I possessed the legal authority, which most certainly I do not, I would substitute my judgment for that of the trial judge.

Because I cannot, in conscience, accept the affirmation of a result which I believe resulted from either inattention or misperception by the jury, I dissent.