This case has sua sponte been removed from the accelerated calendar.
Plaintiff-appellee Mary E. Yelton filed a complaint alleging that she was wrongfully terminated from her employment at SS Dental Lab by defendant-appellant Saundra Stehlin. SS Dental Lab, which is owned and operated by Stehlin, manufactures dental prosthetic devices. In February 1997, Stehlin hired Yelton as a ceramist. Stehlin agreed to pay Yelton $17.75 an hour, based on a 40-hour workweek, and Stehlin agreed to pay for a portion of Yelton's health insurance. Stehlin and Yelton were ceramists, and only one other employee, Renia Messer, worked at the lab as an opaquer. On March 7, 1997, just one month after Yelton was hired, she informed Stehlin that she was pregnant. Five days later, Stehlin fired Yelton. In May, Yelton filed a complaint against Stehlin and SS Dental Lab alleging wrongful discharge due to pregnancy. A jury trial commenced in April 1998. Stehlin twice moved for a directed verdict, arguing that Yelton had not made a prima facie case, but the trial court overruled those motions.
Following closing arguments, the trial court outlined the issues of the case for the jury. Specifically the court listed the issues as follows:
 1. Did the defendants SS Dental Lab and Saundra Stehlin, wrongfully discharge the plaintiff, Mary Yelton, from her employment due to her pregnancy, in violation of Ohio law?
 2. Did the defendants, SS Dental Lab and Saundra Stehlin, have a legitimate business justification for discharging the plaintiff, Mary Yelton?
 3. Did the plaintiff, Mary Yelton, suffer injury or loss as a result of the actions of the defendant [sic]?
 4. If the plaintiff Mary E. Yelton, suffered injury or loss, due to the actions of the defendants, SS Dental Lab and Saundra Stehlin, what is the amount of damages?
 Is the plaintiff, Mary Yelton, entitled to punitive damages?
The court defined the legal issues set forth above. Of relevance here is the court's definition of pregnancy discrimination. The court stated the following:
 [i]n order to prove a case of pregnancy discrimination, the plaintiff, Mary Yelton, must prove beyond a preponderance of the evidence that:
 on or about the time of her dismissal she was pregnant; that she was discharged by the defendant; and that a non-pregnant employee replaced her. These three elements are called the prima facie case.
* * *
 You are instructed by the Court that the plaintiff, Mary Yelton, has established the three elements of a prima facie case.
The court then instructed the jury that its inquiry must focus on whether Stehlin offered a legitimate business justification for discharging Yelton, whether that justification was merely pretextual, and the amount, if any, of damages to be awarded. In a general verdict, the jury found for Yelton, awarding her $18,460 in compensatory damages and no punitive damages. In its interrogatories, the jury indicated that Yelton was wrongfully discharged because of pregnancy, that Stehlin had failed to give a legitimate business justification for discharging Yelton, and that Stehlin's justification was pretextual.
Stehlin filed a motion for judgment notwithstanding the verdict, for a new trial, or for remittitur. The trial court overruled the motion, and Stehlin timely appeals the judgment of the trial court. Stehlin alleges two assignments of error, neither of which is well taken. In her first assignment of error, Stehlin argues that the trial court erred in not granting a directed verdict, judgment notwithstanding the verdict, and/or a new trial, because Yelton had failed to establish a prima facie case of pregnancy discrimination, and she argues in the alternative that the trial court erred in refusing to grant a remittitur.
Pregnancy discrimination, a form of gender discrimination, is prohibited under both federal and state law.[1] Ohio has held that a victim of sexual harassment or discrimination also has a cause of action for wrongful discharge by an employer in violation of public policy.[2] It has been concluded that the Ohio Supreme Court's endorsement of a cause of action based on public policy against sexual discrimination necessarily extends to pregnancy discrimination.[3] This case was brought before the trial court for wrongful termination based on Ohio's general public policy against sexual discrimination, including pregnancy discrimination.
The Ohio Supreme Court has ruled that federal case law interpreting Title VII is generally applicable when interpreting alleged violations of R.C. Chapter 4112.[4] Similarly, federal case law is instructive in interpreting discrimination actions alleging violations of public policy. In United StatesPostal Serv. Bd. v. Aikens,[5] the United States Supreme Court concluded that, in a Title VII case, the district court could not revisit whether a plaintiff had proven a prima facie case after the court concluded at trial that a prima facie case had been established.[6] Specifically, the Court reasoned that the method imposed for establishing a prima facie case was never intended to be a rigid, mechanized, or ritualistic formula.[7]
The Court, therefore, concluded that "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant."[8] The Sixth Circuit has uniformly applied Aikens and refused to evaluate whether a prima facie case has been established where there is a trial on the merits.[9] Absent a contrary ruling, we conclude that, where the trial judge has determined that a prima facie case has been made and after a trial on the merits in favor of the plaintiff, the issue of whether the plaintiff succeeded in establishing a prima facie case is not reviewable on appeal. Rather the relevant inquiry on appeal should be whether the plaintiff produced sufficient evidence to sustain the jury's findings that the plaintiff was the victim of discrimination.[10]
Stehlin's assignment of error evades the ultimate question of discrimination by focusing solely on the unreviewable issue of whether a prima facie case was established. Pursuant to App.R. 12(A)(1)(b), this court may only determine errors on appeal that have been alleged in "the assignments of error set forth in the briefs." Absent an assignment of error raised by Stehlin on the issue of discrimination, we choose not to invade the jury's important fact-finding function by addressing the issue suasponte.[11] In sum, we conclude that we are unable to review the first assignment of error as it relates to whether Yelton established a prima facie case because the trial judge found that a prima facie case was established and because there was a trial on the merits. Furthermore, we refuse to disturb the jury's findings relating to discrimination because Stehlin does not present this as an assignment of error.
Stehlin also argues in her first assignment of error that the trial court erred in refusing to grant remittitur. Stehlin argues that she is entitled to a remittitur because the jury did not follow the court's instructions relating to mitigation of damages. Specifically, she contends that Yelton should only be compensated for six months of unemployment and that her damages should be reduced by any money that she earned from other jobs and by any unemployment compensation that she received during that time.
Under Civ.R. 59(A)(4), a new trial may be granted if the court finds that the verdict is excessive and the product of passion or prejudice on the part of the jury. Where the court finds that the jury's award was excessive, but not influenced by passion or prejudice, the court may order a remittitur with the consent of the prevailing party.[12] Before adjusting the damages award, however, the court must "affirmatively find that the jury's verdict is manifestly excessive."[13] While excessive damages are determined by reviewing the weight and sufficiency of the evidence,[14] we are mindful that a motion granting or denying a remittitur is made at the discretion of the trial court.[15] Therefore, we may not substitute our judgment for that of the trial court unless we conclude that the trial court's decision was unreasonable, arbitrary, or unconscionable.[16]
After reviewing the record, we cannot say that the trial court abused its discretion in denying a remittitur. The jury was instructed that, if it found for Yelton, damages should be based on "any loss" suffered by Yelton for a period of about one year, from March 12, 1997, through April 9, 1998. Yelton's claim for damages included not only loss of pay, but also reduction in pay, loss and reduction in benefits, and mental distress. Ample evidence was produced at trial relating to these damages. Moreover, assuming that, as Stehlin suggests, we are able to evaluate the jury award based only upon Yelton's salary less unemployment compensation and other outside employment, we still fail to see how the award was manifestly excessive or influenced by passion or prejudice. Accordingly, we hold that the trial court did not abuse its discretion in denying a remittitur, and we overrule the remaining portion of the assignment of error as it relates to remittitur.
In her second assignment of error, Stehlin challenges the trial court's approval of the use of a "calendar" in closing arguments. Initially, we note that there was no objection to or use of a "calendar" in the closing arguments, but that Stehlin did object to the use of a "diagram." Assuming that this is the exhibit to which Stehlin refers to in her assignment of error, we are nevertheless unable to consider its significance because the diagram was not admitted as evidence or preserved in the record. Evid.R. 103(A)(2) imposes the following requirement:
 [e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and * * * [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
It is not clear what was included on the diagram in question, and no proffer was made to admit it. Under App.R. 9 and 10(A), Stehlin must provide a complete record for our review, which includes exhibits, journal entries, transcripts, and other allowable documents. When portions of the record necessary for resolution of assigned errors are omitted from the record, we have no choice but to presume the validity of the trial court's proceedings.[17] Accordingly, we overrule Stehlin's second assignment of error.
For all the foregoing reasons, we overrule the first assignment of error as it relates to remittitur and hold that it is otherwise moot. Further, because we presume regularity in the trial court's proceedings, we overrule the second assignment of error. Accordingly, the judgment of the trial court is affirmed.
Judgment affirmed.
Sundermann, P.J., Winkler and Shannon, JJ.
Judge Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] See Section 2000 et seq., Title 42, U.S. Code (Pregnancy Discrimination Act); R.C. 4112.02(A).
[2] Collins v. Rizkana (1995), 73 Ohio St.3d 65,652 N.E.2d 653, syllabus.
[3] See Cechowski v. Goodwill Industries (May 14, 1997), Summit App. No. 17944, unreported, appeal not allowed (1997), 80 Ohio St.3d 1414,684 N.E.2d 706.
[4] See Plumbers Steamfitters Joint Apprenticeship Commt. v.Ohio Civ. Rights Comm. (1981), 66 Ohio St.2d 192, 196,421 N.E.2d 128, 131.
[5] (1983), 460 U.S. 711, 103 S.Ct. 1478.
[6] See id. at 714-715, 103 S.Ct. at 1481-1482 fn. 4.
[7] See id. at 715, 103 S.Ct. at 1482.
[8] Id.
[9] See Equal Employment Opportunity Comm. v. Avery DennisonCorp. (C.A.6, 1997), 104 F.3d 858, 861; Suggs v. Servicemaster Ed.Food Mgt. (C.A.6, 1996), 72 F.3d 1228, 1232; Brownlow v. EdgecombMetals Co. (C.A.6, 1989), 867 F.2d 960, 963. See, also, Walthierv. Lone Star Gas Co. (C.A.5, 1992), 952 F.2d 119, 122-123
(following the reasoning outlined in the Sixth Circuit for not reviewing whether a prima facie case of discrimination has been made when there has been a trial on the merits).
[10] See Aikens, supra, at 714, 103 S.Ct. at 1481. See, also,Equal Employment Opportunity Comm., supra; Suggs, supra;Brownlow, supra; Toole v. Cook (May 6, 1999), Franklin App. No. 98AP-486, unreported; Byrnes v. LCI Communication Holdings Co.
(1996), 77 Ohio St.3d 125, 132-33, 672 N.E.2d 145, 150-151
(Resnick, J., dissenting).
[11] See Hicks v. Westinghouse Materials Co. (Sept. 27, 1995), Hamilton App. No. C-940094, unreported.
[12] See Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638,654, 635 N.E.2d 331, 345 fn. 6; Chester Park Co. v. Schulte
(1929), 120 Ohio St. 273, paragraph three of the syllabus; Knor v.Parking Co. of Am. (1991), 73 Ohio App.3d 177, 187-188,596 N.E.2d 1059, 1065.
[13] Uebelacker v. Cincom Systems, Inc. (1992), 80 Ohio App.3d 97,103, 608 N.E.2d 858, 862.
[14] See id.
[15] See Betz v. Timken Mercy Med. Ctr. (1994), 96 Ohio App.3d 211,218, 644 N.E.2d 1058, 1063; Knor, supra, at 187,596 N.E.2d at 1063.
[16] See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
[17] See Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197,199, 400 N.E.2d 384, 385.