OPINION.
Defendant-appellant Wal-Mart Stores, Inc., appeals from the judgment entered upon a jury's verdict awarding the plaintiff-appellee, Patricia Champ, $147,213.01 for personal injuries. In three assignments of error, Wal-Mart argues that the trial court erred by (1) granting Champ's motion for a directed verdict on the issue of liability; (2) overruling its motion for a new trial or, in the alternative, for remittitur; and (3) awarding Champ prejudgment interest. None of the assignments of error is well taken.
On November 14, 1996, Champ was a customer at the Colerain Wal-Mart store. She testified that Michele Manis, a Wal-Mart employee, handled a thirty-pound box of facial tissue in such a way that it struck Champ in the back of her neck. Champ testified that Manis repeatedly apologized to her. After declining medical attention, she testified, she went through the checkout line and left the store. When she reached her car, she threw up.
Although she experienced pain and a sleepless night, the next morning Champ went to the job she had held since 1992 as the office manager for Stacey Greenert, M.D. Later that day, Dr. Greenert, an internist, examined her for her complaints of neck pain. He noted "marked spasm" and severe pain in the back of her neck. He referred Champ to the emergency room of Good Samaritan Hospital. The next day at the emergency room Champ still complained of neck and shoulder pain, dizziness, and headaches. The diagnosis was cervical strain. The emergency-room physician prescribed pain medication and referred her back to Dr. Greenert. Through January 1997, Champ underwent physical therapy and the use of heat and analgesia to treat her chronic pain. Dr. Greenert continued to treat her with pain relievers, tranquilizers, and mood elevators, and he also prescribed a soft cervical collar. The treatment was not particularly effective.
On November 3, 1998, Champ filed her complaint seeking damages for the injuries allegedly caused by Wal-Mart's negligence. The trial court referred her claim to compulsory arbitration, and on February 11, 2000, the three-member panel unanimously awarded her $65,000. Wal-Mart appealed the arbitration award. At the ensuing trial, which was presided over by a visiting judge, the jury returned a unanimous verdict in the sum of $147,213.01 in favor of Champ against Wal-Mart. In response to Interrogatory No. 1, the jury stated that Champ's injuries were "a direct result of being struck by a falling carton of merchandise." In response to Interrogatory No. 3, the jury itemized the damages for past and future medical expenses and for past and future pain and suffering. At a separate hearing, the trial court, pursuant to R.C. 1343.03, granted Champ's timely motion for prejudgment interest in the sum of $63,220.65 for the period of November 14, 1996, to March 2, 2001.
 I. The Directed Verdict
In its first assignment of error Wal-Mart argues that the visiting judge abused his discretion when he directed a verdict for Champ on the issue of liability. The standard for a directed verdict, set forth in Civ.R. 50(A)(4), provides that the court, after construing the evidence submitted most strongly in favor of the party opposing the motion, must determine whether reasonable minds can come to but one conclusion and whether that conclusion is adverse to the nonmoving party. See Texler v.D.O Summers Cleaners (1998), 81 Ohio St.3d 677, 679, 693 N.E.2d 271,273; see, also, Knor v. Parking Co. of Am. (1991), 73 Ohio App.3d 177,187, 596 N.E.2d 1059, 1065. The court cannot consider the weight of the evidence or the credibility of the witnesses. See id. A motion for a directed verdict raises a question of law. See id. The test is whether there is evidence of substantial probative value to support the claims or defenses of the party against whom the motion is directed. See id.
Wal-Mart contends that the visiting judge implicitly resolved disputed factual issues relevant to its liability that should have been decided by the jury. The visiting judge instructed the jury, "Wal-Mart admits that the carton fell as a result of negligence on the part of Wal-Mart * * *. Wal-Mart denies she was injured as a direct result of the fall of the carton of merchandise * * *." Wal-Mart argues that Champ's testimony, during her cross-examination, contradicted her discovery deposition with respect to how she was struck by the box and whether she saw Manis throw the box. From this, it concludes that there were credibility issues for the jury to decide. We disagree.
In corrosive verbal exchanges between counsel on the morning of trial, Wal-Mart's counsel first told the judge that he was stipulating Wal-Mart's negligence. Then he refused to admit negligence, but, during his opening statement, he conceded that Champ was hit by a box. Wal-Mart's incident report of November 14, 1996, confirmed this fact. As Manis did not testify and Wal-Mart offered no direct evidence to refute Champ's assertion that she was struck by the box, the visiting judge correctly directed a verdict for Champ on the issue of negligence. In his instructions to the jury, the visiting judge framed the question to be decided as follows: "whether Pat Champ's injuries, if any, were directlycaused by her being struck by the falling carton of merchandise, and if so, the nature and extent of these injuries, if any." (Emphasis added.)
The jury's answer to Interrogatory No. 1 conclusively refuted Wal-Mart's argument that it had presented factual issues for the jury to resolve regarding negligence. Interrogatory No. 1 asked, "Was the plaintiff, Pat Champ, injured as a direct result of being struck by a falling carton of merchandise at a store of the defendant, Wal-Mart Stores, Inc., on November 14, 1996?" The jury answered, "Yes."
Before the jury was discharged, Wal-Mart made no claim under Civ.R. 49(B) that the verdict was irreconcilable with the jury's answers to the interrogatories. Its failure to timely object, therefore, was a waiver of that claim. See Cooper v. Metal Sales Mfg. Corp. (1995),104 Ohio App.3d 34, 41-42, 660 N.E.2d 1245, 1250.
Wal-Mart's first assignment of error is overruled.
 II. The Motion for a New Trial
Wal-Mart next argues that it was entitled to a new trial under Civ.R. 59(A) or, in the alternative, a remittitur. The grounds it offered below for a new trial included (1) a challenge to the directed verdict, which was nothing more than a rehashing of the arguments it has made on appeal in its first assignment of error; (2) a claim that the jury awarded excessive damages; and (3) the claim that the judgment was not sustained by the weight of the evidence.
The Verdict Was Against the Manifest Weight of the Evidence
We first address Wal-Mart's argument that the visiting judge should have granted its motion for a new trial because the verdict was against the manifest weight of the evidence. A reviewing court will not reverse a judgment supported by some competent, credible evidence going to all the essential elements of the case as being against the manifest weight of the evidence. See C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, syllabus; see, also, Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273, 1276. The standard of review, where it is contended under Civ.R.59(A)(6) that a new trial should be granted because the verdict is against the manifest weight of the evidence, is abuse of discretion. See Antal v. Olde WorldeProducts, Inc. (1984), 9 Ohio St.3d 144, 145-146, 459 N.E.2d 223, 225. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. See Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252. Although the trial court is in the best position to determine the correctness of the jury's verdict, its discretion is not absolute. See Antal v. Olde Worlde Products, Inc.,9 Ohio St.3d at 145-146, 459 N.E.2d at 225.
Contending that any pain was related to the degenerative arthritic changes in her neck, Wal-Mart's defense at trial depended entirely upon the opinion of Bernard B. Bacevich, M.D., the orthopedic surgeon who had conducted the defense medical examination of Champ and was Wal-Mart's only witness. His opinion was that Champ had sustained only a minor muscle strain that had healed within weeks. In support of his opinion, Wal-Mart argued that x-rays and EMG and MRI tests showed only degenerative arthritic changes of the disc spaces in the spine at C-5/6 and C-6/7.
But three of Champ's treating physicians, Dr. Jeffrey L. Stambough, an orthopedic surgeon specializing in sports medicine, Dr. Luis R. Pagani, a neurologist specializing in pain management, and Dr. Greenert, agreed that although Champ had sustained an acute cervical strain, based on a reasonable medical probability, the pain and symptoms resulting from her injury were caused by an aggravation of degenerative disc disease triggered by being struck in the neck by the box. They testified that this condition was consistent with the fact that Champ had had no pain before the incident. In his videotaped deposition, Dr. Pagani testified that, as a direct result of being struck by the box, Champ's continuing symptoms were evidence that her injuries were permanent. He testified that, had the injuries not occurred, Champ would have likely been pain-free. Dr. Greenert concurred in the opinion that Champ's injuries were permanent and testified that he observed that Champ had experienced a radical personality change after the incident because of her complaints of pain.
Using the recommended instruction from 1 Ohio Jury Instructions (2001) Section 23.10, the trial court instructed the jury on both aggravation and acceleration of an already existing physical condition. If a plaintiff suffers an aggravation of an existing injury, the defendant is liable for damages proximately caused by its negligence. See Kantor v.McKinley (1966), 9 Ohio App.2d 243, 244-246, 224 N.E.2d 141, 143. Although defense counsel objected to the instruction, arguing that there was no evidence of acceleration offered at trial, Wal-Mart has not assigned as error the visiting judge's instructions to the jury.
The expert evidence was conflicting. The jury was entitled to believe Champ's experts and to reject the opinion of Dr. Bacevich. As the jury's verdict was supported by competent, credible evidence, it was not against the manifest weight of the evidence. Therefore, the visiting judge did not abuse his discretion in overruling Wal-Mart's motion for a new trial on this basis. See Rhode v. Farmer (1970), 23 Ohio St.2d 82,262 N.E.2d 685, paragraph one of the syllabus; see, also, Brokamp v.Mercy Hosp. Anderson (1999), 132 Ohio App.3d 850, 872-873, 726 N.E.2d 594,610.
Wal-Mart relies on our decision in Kelly v. Clark (Sept. 3, 1993), Hamilton App. No. C-920440, unreported, where the trial court had granted the defendant's motion for a new trial on the ground that the plaintiff's testimony concerning the nature and extent of her injuries was not credible. If anything, our holding in Kelly is authority for approving the visiting judge's decision in this case and overruling Wal-Mart's motion for a new trial, as we have noted that a reviewing court must under Civ.R. 59(A) defer to the trial judge's resolution of issues that are exclusively factual.
Excessive Damages
Wal-Mart contends that the $150,000 verdict was per se excessive even if Champ's medical bills did total $17,163.01. The trial judge is vested with broad discretion in deciding whether to order a new trial because of excessive damages, and a reviewing court cannot reverse the trial judge's decision absent an abuse of discretion. See Knor v. Parking Co. of Am.,73 Ohio App.3d at 187, 596 N.E.2d at 1065. In the absence of demonstrated passion and prejudice, a reviewing court should hesitate to substitute its judgment and set aside a damage award on grounds that it is excessive when the verdict is supported by credible evidence. See Villella v.Waikem Motors, Inc. (1989), 45 Ohio St.3d 36, 40, 543 N.E.2d 464, 469.
Wal-Mart's theory of the case was that, if Champ was struck by the box, she sustained only a soft-tissue injury. But Champ's testimony concerning her pain was corroborated by her medical experts, whose opinion was that she had suffered an injury that had caused an aggravation of her degenerative arthritic disc disease. Based on their testimony, her injury was more than just an ordinary soft-tissue injury, as she experienced pain and limitation in her neck for over four years. Her treating physicians were of the opinion that her symptoms caused by the incident were permanent.
In Interrogatory No. 3, the jury itemized the $147,213.01 in damages awarded in the general verdict as follows: (a) past medical expenses $17,163.01; (b) past pain and suffering $22,600; (c) past inability to perform usual activities $4,520; (d) future pain and suffering $85,775; and, (e) future inability to perform usual activities $17,155. These itemized figures reflected that the jury had considered the evidence and with reasonable certainty arrived at its verdict.
A Prior Neck Injury
Wal-Mart argued to the jury at trial that an unrelated automobile accident, which had occurred on December 17, 1994, in which Champ had sustained a neck injury, was a source of her symptoms. The Providence Hospital emergency room report showed that she complained of neck pain and headaches after this accident. Champ testified that the symptoms resolved themselves in two weeks and that she received no further treatment and experienced no symptoms until the box struck her in the neck at the Wal-Mart store. Her employer, Dr. Greenert, who saw her daily, also testified that she was pain-free before the incident at Wal-Mart. The jury found with reasonable certainty that the injuries from this earlier incident were unrelated to the injuries Champ sustained when she was struck by the box in the Wal-Mart store
Prejudice in Closing Argument
 The Verdict Was Influenced by Passion and Prejudice
Wal-Mart next argues that the jury's verdict was influenced by passion or prejudice due to the remarks of Champ's counsel in closing argument. The record shows that no objection was made to these remarks. Wal-Mart misstates the record in its brief when it says that prejudice arose when Champ's counsel referred to Wal-Mart in closing argument as a "mega corporation." According to the trial transcript, counsel said that Champ was trying to "take on a multi-national defendant" with the best lawyers and video equipment. Wal-Mart also argues that the jury's verdict for Champ was sympathy-based because counsel referred to Champ in closing argument as a sixty-year-old divorced woman, and the jury saw her cry on the witness stand. Wal-Mart cites no authority to support its claim that counsel's remarks were inappropriate. We hold that the argument has no merit.
Mathematical Formula for Pain and Suffering
Wal-Mart claims, without citation to authority, that it was prejudiced by the "penny a minute" calculation for damages for pain and suffering argued to the jury by Champ's counsel in closing argument. We hold that the argument was the same as a per diem argument, approved by the supreme court, when, as here, it was made in the opening portion of counsel's closing argument with the opportunity for rebuttal. See Grossnickle v.Germantown (1965), 3 Ohio St.2d 96, 209 N.E.2d 442, paragraph one of the syllabus. Without an objection, Wal-Mart cannot now assign error. Seeid.
Without timely objection to counsel's remarks in closing argument, the errors, if any, were not preserved for review on appeal and did not rise to the level of plain error under Civ.R. 51(A). Therefore, any error now claimed by Wal-Mart in closing argument was waived. See Goldfuss v.Davidson (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus.
III. Remittitur
Wal-Mart argues that when a new trial was not granted, the trial court should have ordered a remittitur, pursuant to Civ.R. 59(A)(4), as the verdict was excessive and the result of passion and prejudice. The amount of the verdict alone did not establish passion and prejudice. To be entitled to a remittitur, Wal-Mart had to identify what wrongfully inflamed the sensibilities of the jury.
But an excessive verdict may also be reduced by remittitur even if it was not tainted by passion and prejudice. See Brooks v. Wilson (1994),98 Ohio App.3d 301, 307, 648 N.E.2d 552, 556. Before a court may exercise its inherent power and grant a remittitur, the following criteria must be met: "(1) unliquidated damages are assessed by a jury, (2) the verdict is not influenced by passion or prejudice, (3) the award is excessive, and (4) the plaintiff agrees to the reduction in damages." Wightman v.Consolidated Rail Corp. (1999), 86 Ohio St.3d 431, 444, 715 N.E.2d 546,557.
We find Shoemaker v. Crawford (1991), 78 Ohio App.3d 53, 603 N.E.2d 1114, cited by Wal-Mart to support its argument that the visiting judge should have reduced the verdict by a remittitur, distinguishable on its facts. In Shoemaker, the jury in a survival action awarded $2,000,000 to the estate of the deceased for thirteen days' pain and suffering. The reviewing court concluded that an award of $150,000 per day was not compensation, but punishment, and as a matter of policy ordered a remittitur. The result in Shoemaker was clearly limited to its own facts.
From our review of the record, there is no evidence of misconduct by counsel or error in the trial to satisfy the criteria governing Wal-Mart's claim that the verdict was excessive or that it was influenced by passion and prejudice. The visiting judge did not abuse his discretion in refusing to grant a remittitur.
Because we hold that the visiting judge did not abuse his discretion in overruling Wal-Mart's motion for a new trial or for a remittitur, its second assignment of error is overruled.
IV. Prejudgment Interest
In its third assignment of error, Wal-Mart contends that the trial court abused its discretion when it (1) did not refer Champ's motion for prejudgment interest to the visiting judge who had presided at the trial, and (2) granted Champ's motion for prejudgment interest. To award prejudgment interest upon a timely filed motion under R.C. 1343.03(C), the court must find that the party ordered to pay prejudgment interest failed to make a good-faith effort to settle and the party to whom the prejudgment interest is to be paid did not fail to make a good-faith effort to settle. See Moskovitz v. Mt. Sinai Med. Ctr. (1994),69 Ohio St.3d 638, 658, 635 N.E.2d 331, 347. The standard of review is abuse of discretion. See id.
Failure of "good faith" is not the equivalent of "bad faith." SeeKalain v. Smith (1986), 25 Ohio St.3d 157, 159, 495 N.E.2d 572, 574. In the syllabus of Kalain, the supreme court provided the following guidelines for determining if a party has failed to make a good-faith effort to settle:
 A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer.
 The burden of proof is on the party seeking prejudgment interest. To prevail, there must be evidence of the following:
 a written (or something equally persuasive) offer to settle that was reasonable considering such factors as the type of case, the injuries involved, applicable law, defenses available, and the nature, scope and frequency of efforts to settle. Other factors would include responses or lack thereof — and a demand substantiated by facts and figures. Subjective claims of lack of good faith will generally not be sufficient.
 Moskovitz v. Mt. Sinai Med. Ctr., 69 Ohio St.3d at 659,635 N.E.2d at 348. In contending that the trial court abused its discretion by not referring Champ's motion for prejudgment interest to the visiting judge, Wal-Mart ignores the significance of the record of the proceedings, which provided an ample chronological blueprint for the trial court to independently and accurately assess whether R.C. 1343.03(C) was thwarted by either party's lack of a good-faith effort to settle. The irony of this claim is Wal-Mart's preference for the visiting judge, whom it otherwise describes in its brief as having "prevented Wal-Mart from receiving a fair trial." The argument is frivolous.
Wal-Mart claims that it possessed a good-faith, objectively reasonable belief that it was not liable to Champ. The transcripts of the trial and the hearing on prejudgment interest demonstrate that Wal-Mart failed to rationally evaluate and assess the risks of its potential liability. During the hearing on Champ's motion for a directed verdict, Wal-Mart tried to withdraw its stipulation of negligence. It seriously miscalculated that its strategy of a withering cross-examination of Champ's account of how her injuries had occurred, would cause the jury to discredit her testimony entirely. If the strength of Wal-Mart's defense to liability was Champ's credibility, it should have been evident that it was seriously jeopardized by Manis's unavailability.
If Wal-Mart could not discredit Champ, then its only hope was to minimize the size of the damage award. It relied solely on Dr. Bacevich's testimony in its attempt to convince the jury that Champ had sustained nothing more than a "soft tissue strain." Almost four years after her injuries, Dr. Bacevich conducted a medical examination of Champ for Wal-Mart and opined that there was no objective sign of injury. He concluded from the x-rays and tests that her symptoms were caused by aging and were unrelated to the incident.
In view of the medical opinions of Champ's three experts, Dr. Greenert, Dr. Stambough, and Dr. Pagani, Wal-Mart's strategy to bet the house on Dr. Bacevich's medical examination and testimony was a gamble that failed to take into account the evidence of four year's pain and limitation of movement experienced by Champ, as well as the evidence that her pain was the direct result of the aggravation of her degenerative arthritic disc disease triggered by the incident. Each of Champ's expert witness confirmed her continuing pain. Wal-Mart's evaluation of the evidence involved simply putting its head in the sand when it came to Champ's evidence.
If Wal-Mart ever had a good-faith, objectively reasonable belief that it was not liable, the arbitration panel's unanimous award of $65,000 should have apprised it that a verdict for Champ was possible, if not probable. See Moskovitz v. Mt. Sinai Med. Ctr., 69 Ohio St.3d at 664,635 N.E.2d at 351. Furthermore, its failure to engage in settlement negotiations until two weeks before trial, and its ensuing offer of $25,000 to settle the case, even though Champ was claiming $17,163.01 in medical expenses and permanent injuries, objectively supported the trial court's finding of its lack of good faith. Wal-Mart's confidence in its effort to persuade the jury that Champ's reasonable and necessary medical expenses were $2,000, was, to say the least, totally unrealistic in light of the arbitration panel's award.
By contrast, there is more than ample evidence in the record to indicate Champ's good-faith effort to settle her case. Before trial, the visiting judge requested the parties to discuss settlement. Champ made a demand of $58,000, which was less than the arbitration award and Wal-Mart refused to increase its $25,000 offer. Champ again reduced her demand to $50,000 at trial before the jury retired to begin deliberations. Again, Wal-Mart refused to increase its initial offer.
Therefore, we hold, based upon the record, that the trial court had a duty as a matter of law, just as the majority had concluded inMoskovitz, to award prejudgment interest to Champ. The third assignment of error is overruled.
Having overruled Wal-Mart's three assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Doan, P.J., and Hildebrandt, J., concur.