CASSIDY, APPELLANT, *v.* THE OHIO PUBLIC SERVICE CO.,
APPELLEE.

(No. 592—Decided March 25, 1946.)

*Messrs. Murray & Murray,* for appellant.
*Messrs. Flynn, Frohman, Buckingham, Py & Kruse,*
for appellee.

CONN, J. This is an appeal to this court by the
plaintiff, appellant herein, on questions of law from a

judgment of the Court of Common Pleas entered on a directed verdict for the defendant, appellee herein, The Ohio Public Service Company. This action is one for damages for personal injuries sustained by plaintiff and the parties will be referred to herein as they appeared in the trial court.

In his petition as amended, plaintiff alleges that on February 10, 1941, and prior thereto, he was in the employ of The Kalill Company, which was engaged in constructing a storm sewer on Buchanan street in the city of Sandusky, Ohio; that at such time the construction work had proceeded easterly on Buchanan street to a point where that street intersects Mills street at approximately right angles; that one block south of the intersection, Mills street intersects Perkins avenue and that on the south side of the last mentioned intersection the defendant maintained a substation and the employees of defendant had a clear and unobstructed view from the substation to the intersection of Mills and Buchanan streets; and that the defendant had knowledge of the construction work as it progressed to and into the intersection of Mills and Buchanan streets.

Plaintiff alleges further that on such date and prior thereto the defendant maintained high tension wires on poles on the east side of Mills street starting at defendant's substation and running north therefrom; that the construction company used a crane with a long boom to lower the reinforced tile into position and that as plaintiff had his hands on the tile which was thus being lowered, electricity from the high tension wires jumped to the boom of the crane, which was one or two feet west of the high tension wires, and approximately 33,000 volts of electricity passed through plaintiff's body, severely injuring him whereby he sustained dam-

ages; that the injury and damage sustained by plaintiff were the proximate result of defendant's negligence in that defendant violated Section 101 of the city ordinances of the city of Sandusky, Ohio, which ordinance granted to The Sandusky Gas Light Company of Sandusky, Ohio, a right of way through and upon the streets of that city for the purpose of erecting and maintaining poles and necessary wires to convey electrical current for light, power and heating and the further right to operate and maintain the poles and wiring now in use and heretofore operated by The Sandusky Electric Light, Fuel, Gas & Supply Company and The Western Electric Company, assigned to The Sandusky Gas Light Company; that defendant could or should have seen that the machinery of the construction company would come within proximity of the high tension wires; that defendant had knowledge thereof and failed to warn plaintiff; that defendant failed and neglected to shut off the current as the machinery approached the high tension wires; that defendant failed and neglected to properly insulate its high voltage wires; that defendant failed and neglected to raise its wires to such a height as to protect the plaintiff from injury, though it undertook to do so; and that defendant failed to raise its wires in accordance with the customary and usual methods employed in raising wires of like nature.

The amended answer of defendant contains a general denial and a specific denial that defendant had violated the ordinance in failing to insulate its wires at or near the intersection of Mills and Buchanan streets and avers that the provisions in the ordinance for weatherproof insulation is an "unreasonable, illegal, impractical and unsafe requirement"; that even though compliance with the ordinance was required of it, failure

to insulate its wires was not the proximate cause of plaintiff's injuries; that plaintiff's injuries were due solely to the negligent manner in which the employees of The Kalill Company, including plaintiff, used the machinery in operating same in close proximity to the power lines; and that the wires and lines were erected and maintained in a safe manner and in full compliance with the provisions of the National Electrical Safety Code issued by the Department of Commerce of the United States of America and in accordance with the customs and usage of utility companies. The affirmative allegations in the answer of defendant were denied by plaintiff in his amended reply.

The six assignments of error relied on by plaintiff are, in substance, that the trial court erred in directing a verdict for defendant at the close of plaintiff's case and that the judgment of the court is against the weight of the evidence and contrary to law.

We shall first give attention to the alleged violation by defendant of the ordinance of the city of Sandusky known as Section 101 of the recodification of original ordinance No. C-386. This ordinance granted a franchise to The Sandusky Gas Light Company and its successors and assigns to erect and maintain in the streets and alleys of the city of Sandusky, Ohio, poles and wires for a system of electric light, power and heating purposes and contained the following proviso:

"Provided that all wires erected and operated by said The Sandusky Gas Light Company shall be covered with weatherproof insulation * * *."

At the time this ordinance was enacted, Section 3471-3, of the Revised Statutes of Ohio (Section 9195, General Code), expressly provided that all wires for conducting electricity be covered with waterproof insulation. In 1929, the Legislature amended Section

9195, General Code, and eliminated the provision for waterproof insulation.

The alleged violation of the ordinance raises two questions, to wit: Were the provisions of the ordinance as to insulation applicable to the defendant's high tension lines on Mills street at said intersection and, if so, was any duty imposed at such time and place, the violation of which was the proximate cause of plaintiff's injuries?

The provision for weatherproof insulation is limited to "all wires erected and operated by said The Sandusky Gas Light Company." The record does not disclose when the high voltage lines on Mills street were constructed. If these lines were constructed before the ordinance became effective, the requirement for insulation would not apply.

In view of the conclusions we have reached in this case and finding that it must be remanded for further proceedings, it appears to be proper to consider further the legal duty, if any, of defendant to insulate its wires. If, upon a subsequent trial of this case, it is shown that the high voltage lines on Mills street were constructed since the ordinance went into effect, then the further question would arise as to whether the defendant was required to cover each of its high voltage lines on the street with weatherproof insulation, as provided for in the ordinance. Defendant answers that question in the negative.

The charter of the city of Sandusky, adopted on July 28, 1914, limits the time of any franchise given a public utility to 20 years. The franchise under consideration was granted prior to the adoption of the city charter and its duration is not expressly fixed by its terms. Defendant contends that the ordinance relied on by plaintiff has expired by reason of its passage

more than twenty years prior to the time plaintiff was injured.

It appears to be well settled in this state that where the contract between the municipality and the corporation is silent as to the duration of the franchise, the grant is not perpetual but indeterminate, "existing only so long as the parties mutually agree thereto." 19 Ohio Jurisprudence, 302, Section 21; *Parks* v. *Cleveland Ry. Co.,* 124 Ohio St., 79, 96, 177 N. E., 28; *East Ohio Gas Co.* v. *City of Akron,* 81 Ohio St., 33, 90 N. E., 40, 26 L. R. A. (N. S.), 92, 18 Ann. Cas., 332.

It appears also well settled that a franchise which has been accepted and utilized is contractual in character and that the grantee or assignee takes it subject to its burdens and that the duties and conditions prescribed will be discharged. 19 Ohio Jurisprudence, 284, Section 4; page 293, Section 12; 37 Corpus Juris Secundum, 178, Section 25; 23 American Jurisprudence, 743, Section 35.

It is further contended by defendant that it has no common-law duty to insulate its high voltage lines and no statutory duty, as the requirement to do so had been repealed by the Legislature in 1929 when it amended Section 9195, General Code.

By virtue of the provisions of Section 3, Article XVIII of the Constitution of Ohio, municipalities are given "authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." The Home Rule provisions of the Ohio Constitution are self-executing. *Perrysburg* v. *Ridgway,* 108 Ohio St., 245, 140 N. E., 595.

Section 3637, General Code, authorizes municipalities "to regulate the construction and repair of wires,

poles, plants and all equipment to be used for the generation and application of electricity * * *.'' That statute is found in the chapter of enumeration of powers of municipalities and was enacted in 1902. It appears to confer on municipal corporations the ''right of a continuous reasonable regulation.'' 15 Ohio Jurisprudence, 530, Section 46.

Our attention has not been called to any general statute limiting a municipality in this state in the matter of setting up reasonable regulations governing the construction and maintenance of high voltage lines within a municipality. The amendment to Section 9195, General Code, repealing the provision requiring insulation of all wires conducting electricity could hardly have that effect. There being no general statute requiring the insulation of high voltage wires and none making provision as to the manner or character of insulation and none prohibiting it, the field remains open and municipalities, within their respective territorial limits and in the exercise of the powers of local self-government, may make all reasonable regulations therein, subject to constitutional requirements and limitations. 28 Ohio Jurisprudence, 228, Section 120, and cases cited.

It is urged further by defendant that the provision for weatherproof insulation is unreasonable and impracticable and that compliance with these provisions of the ordinance was not required. Defendant claims further ''that said lines were erected in full compliance with the provisions of the National Electrical Safety Code issued by the Department of Commerce of the United States of America and in accordance with the customs and usage and ordinary procedure of utility companies.'' As these defenses are factual in character, they can not be considered and determined on the present record.

The question presented by the record, simply stated, is: Does the record contain credible evidence of defendant's negligence or have such facts and circumstances been shown from which an inference of such negligence may be reasonably drawn, and which was the proximate cause of plaintiff's injury and damage?

Plaintiff having a right to be at the place where he received his injury, it appears to be well settled that defendant owed him the duty to exercise ordinary care in the conduct of its business and the maintenance of its high voltage lines. The dangerous character of electricity of high voltage, when conveyed over uninsulated wires, and its natural tendency to escape, enjoined upon the defendant, in the exercise of ordinary care, the duty to use care commensurate with the danger; that is, such care as a reasonable person would use under the same or similar circumstances. If the defendant failed in this respect, and such failure was the proximate cause of plaintiff's injury and damage, then under well established rules, the defendant would be liable. 15 Ohio Jurisprudence, 514, 515, Sections 27, 28; 18 American Jurisprudence, 441 to 446, Sections 47, 48; 29 Corpus Juris Secundum, 575, Section 39.

The evidence in this case discloses that the defendant had knowledge of the building of the sewer in Buchanan street and the progress of the work as it approached the intersection of such street with Mills street, on which the defendant's high voltage lines were located, and also knowledge of the character of the equipment employed in the construction of the sewer. It appears that a week or ten days before the construction work reached the street intersection and when the construction work was about 100 feet therefrom, the defendant caused all its wires to be raised at

the street intersection and that when this work was completed, the employee of the construction company in charge of the crane inquired of one of the employees of defendant if that was as high as they were going to put the wires and his reply, in substance, was that they could not raise them any higher unless "they lashed the poles to the other poles and put them up on them."

The evidence also tends to show that in view of the equipment used in the construction work, the method employed by defendant in raising its wires at the street intersection was not the customary method used by utility companies; that it would have been practicable to raise the wires higher by lashing two poles together or to have cut the circuit completely on Mills street by building a line around the intersection and taking the lines out of service entirely at that point.

At the time plaintiff received his injury, he was guiding a large concrete tile into position as it was being lowered into the ditch by the operator of the crane. The evidence shows that the crane was set in position, centered with the ditch and blocked, and the operator swung the boom around to see if it would clear the wires before the concrete tile was picked up by the crane. It appears from the evidence that the end of the boom did not come in direct contact with the high voltage wires; that as the plaintiff undertook to guide the tile into position by placing his hands upon it as it was lowered, the electric current jumped across to the boom. The evidence also tends to show that the plaintiff at and prior to the time of his injury had no control of the operation of the crane and no authority over the operator and did not know that the wires at the street intersection carried high voltage electricity.

It is a rule of procedure in this state that upon a

motion by defendant for a directed verdict the trial court must give the evidence offered by plaintiff, with all reasonable inferences that may be drawn therefrom, "the most favorable construction and interpretation of which it is susceptible." *Bauer* v. *Cleveland Ry. Co.*, 141 Ohio St., 197, 47 N. E. (2d), 225.

On the record before us it appears that plaintiff has introduced some evidence of a credible and substantial character tending to establish the negligence of defendant as the proximate cause of the injury and damage complained of. Construing this evidence most strongly in favor of plaintiff, we come to the conclusion that plaintiff, at the conclusion of his testimony, had made out a *prima facie* case of negligence against the defendant. A jury question being presented, it was incumbent on the trial court to overrule the motion of defendant for a directed verdict. *Hamden Lodge* v. *Ohio Fuel Gas Co.*, 127 Ohio St., 469, 189 N. E., 246.

The cases relied on by defendant appear to be distinguishable on the facts from the instant case. We have considered also the doctrine of reasonable anticipation of danger urged by defendant as a standard of diligence. The facts and circumstances presented when plaintiff rested his case were hardly of such character as to preclude a person of ordinary prudence and care from anticipating that plaintiff and other workmen at the street intersection might be injured by the high voltage current escaping to the boom of the crane.

It is claimed also by defendant that the evidence tends to show negligence on the part of plaintiff. If this be true, the negligence or contributary negligence of plaintiff on the record presented here would be for the jury.

*Judgment reversed and cause remanded.*

CARPENTER and STUART, JJ., concur.