CASSIDY, APPELLEE, *v.* THE OHIO PUBLIC SERVICE CO., APPELLANT.

*Messrs. Murray & Murray,* for appellee.
*Messrs. Flynn, Py & Kruse* and *Mr. F. H. Buckingham,* for appellant.

CARPENTER, J. This appeal on questions of law by the defendant followed a judgment for plaintiff for $75,000 for injuries resulting from serious burns and shock from a current of electricity coming from defendant's lines while plaintiff was engaged in laying large sewer pipes across the intersection of Mills and Buchanan streets in Sandusky. That work was being done by plaintiff's employer, The Kalill Company.

This matter has been in this court on two earlier appeals. The first, *Cassidy* v. *Ohio Public Service Co.,* 74 Ohio App., 355, 58 N. E. (2d), 802, related to preliminary matters in an earlier case in which the petition was dismissed.

An appeal, *Cassidy* v. *Ohio Public Service Co.,* 78 Ohio App., 221, 69 N. E. (2d), 648, followed a judgment on a directed verdict for defendant. That judgment was reversed with a remand for a new trial. (A motion to certify the record was overruled by the Supreme Court June 12, 1946.)

In the report of the latter decision by this court, the issues and most of the facts are stated and will not be repeated here. In that trial the verdict was directed at the close of plaintiff's case; in this case,

there was an evidence defense which disputed every fact question. These disputes the jury resolved in favor of the plaintiff.

One of the assignments of error is that the verdict was against the weight of the evidence on both the issues of liability and of damages. This contention is not sustained, nor is the kindred one that the amount of the verdict indicates that it was influenced by passion and prejudice.

In this appeal, the defendant assigns as error the failure of the court to dismiss the petition because the action was barred by the statute of limitations. The plaintiff was injured on February 10, 1941. On July 7, 1941, he filed an action for damages. On July 30, 1943, on motion, the court ordered certain parts of the petition stricken out, and, plaintiff refusing to file an amended petition, the court dismissed the cause. On that phase of the order, the journal entry says:

"And the court having been advised by the plaintiff that he refuses to abide by the order of this court in relation to filing a third amended petition complying with the sustaining of defendant's specifications numbers 3, 4 and 5 of the motion to strike, for the reason that said plaintiff intends to appeal the rulings of this court in relation to said specifications numbers 3, 4 and 5, it is therefore ordered, adjudged and decreed that plaintiff's petition be dismissed. Exceptions to plaintiff saved."

That order was affirmed by this court (74 Ohio App., 355) on October 11, 1943. This case was filed on April 26, 1944, which was less than one year from July 30, 1943, the date of the dismissal of the first case, but more than two years from February 10, 1941, the date of injury.

The defendant contends that the plaintiff voluntarily dismissed his first case, hence, that he is not entitled to the protection of Section 11233, General Code, which provides in part that "if the plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date of * * * or failure has expired, the plaintiff * * * may commence a new action within one year."

From the record of the trial court in the first action, and the report of the decision of this court, it does not appear that either court treated, or was warranted in treating, that dismissal as voluntary on the part of plaintiff. It was the action of the court, as pointed out by Judge Lloyd in the opinion of this court, and plaintiff failed "otherwise than upon the merits."

Again it is urged that the ordinance of the city of Sandusky requiring electric lines to "be covered with a waterproof insulation" was not applicable here. In the former review (78 Ohio App., 221) this court discussed that phase of the case and it is content with what was said and done on that subject. It was there said that "As these defenses are factual in character, they can not be considered and determined on the present record."

In this trial, defense evidence on this subject was presented and it raised fact questions, particularly as to whether the failure to insulate the wires was the proximate cause of the damages. That question was fairly submitted to the jury.

Several assignments of error relate to incidents in the trial concerning two specifications of negligence alleged in the amended petition, as follows:

"3. In that although there was a clear view to and from the intersection of Mills and Buchanan streets

and defendant's substation, and defendant could have and should have seen the machinery which The Kalill Company was operating, and the direction in which said machinery was proceeding, and that it would come within proximity to its high tension wires, *said defendant failed and neglected to make arrangements to shut off its current or to shut off its current at such time when this machinery would be in the vicinity or near to these high tension wires.*" (Italics added.)

"5. In that although this defendant had actual knowledge of the presence of machinery which was so constructed and which in its operation must necessarily come within range of its high tension wires, *it failed and neglected to make arrangements to shut off its current or to shut off its current at such times when this machinery would be in the vicinity or near to these high tension wires.*" (Italics added.)

Plaintiff offered no evidence to sustain these charges of negligence, that defendant "failed and neglected to make arrangements to shut off its current." Notwithstanding this state of the evidence, the defendant, perhaps assuming that the matter of "arrangements to shut off its current" was peculiarly within its knowledge, called as a witness its general line foreman and inquired of him about a conversation he had in behalf of defendant with Kalill, the sewer contractor, when his work was "a couple hundred feet" from the Mills and Buchanan street intersection. To this plaintiff objected for the reason that he was not present. His objection was sustained.

The defendant then offered to prove that the witness told Kalill "that when they got to using the big crane near the power lines, Mr. Kalill should call the Ohio Public Service Company and they would then take the lines out of service."

The "big crane" referred to the equipment used in placing in the trench the large six-foot by six-foot concrete tile and by which the contact was made with the current which caused plaintiff's injuries as he guided the tile with his hands. Another type of equipment called a "back-hoe" was used to dig the thirteen-foot-deep trench. It also appears that when the trench work got to that intersection, it was necessary to lower the water pipe on Mills street before the sewer trench could be dug across it. This delayed the sewer work two or three days.

After plaintiff's injury, the defendant's lines were taken out of service before the sewer work was completed under them. To do this, the currents over them had to be literally detoured, which was quite a complicated procedure and required several hours work by a crew of linemen, and had to be done at a time and in such way that service to defendant's patrons would be inconvenienced as little as possible.

Whether the defendant "failed and neglected to make arrangements to shut off its current" was a question raised by plaintiff in his amended petition. How could such "arrangements" have been made but by such verbal acts of the representative of the defendant and sewer contractor, as stated in the proffered evidence? Certainly it could not have been made with plaintiff, who had no authority in the matter. He was not even a foreman on the sewer job. The question was not the truth of the statements made, but was an arrangement made? The verbal acts of the line foreman speaking with the contractor about "shutting off the current" was primary evidence on an issue in the case. It was not merely a part of the *res gestae.*

The evidence principle was stated in 6 Wigmore on Evidence (3 Ed.), 185, Section 1770, as follows:

"Where *the utterance of specific words* is itself *a part of the details of the issue under the substantive law and the pleadings,* their utterance may be proved without violation of the hearsay rule, because they are not offered to evidence the truth of the matter that may be asserted therein."

In another way, it is stated in 22 Corpus Juris, 287, Section 313:

"An unsworn statement may not only furnish circumstantial evidence of relevant facts, or constitute part of a transaction or occurrence, but it may also, in and of itself, bring about, or assist in bringing about, a legal result, in which case proof of the statement is necessarily relevant, because the fact of making the statement is an issue in the case."

A later statement of this is found in 31 Corpus Juris Secundum, 1012, Section 260.

A similar situation arose in *Blanchard* v. *Child,* 73 Mass. (7 Gray), 155. That was an action to replevin an omnibus. The defendant claimed to have purchased it at a judicial sale to satisfy the debt of the one in possession of the bus. The plaintiff offered a witness to a conversation he had with that judgment debtor to the effect that the debtor had possession under a conditional sale contract. As in this case, the defendant objected for the reason he was not present at the conversation. The court said:

"The evidence offered to prove the agreement of sale was clearly competent. It was not hearsay, but legal proof of a contract of which there was no other or better evidence. It was evidence of a fact, and not of a mere conversation or declaration. It being neces-

sary to prove the agreement, of which there was no written evidence, it might be shown by the testimony of any one who was present when it was made."

To like effect are *Hankins* v. *Young*, 174 Ia., 383, 156 N. W., 380; *Liberty Bank* v. *Ernst*, 93 Cal. App., 560, 269 P., 959; *Cannon* v. *Chadwell*, 25 Tenn. App., 42, 150 S. W. (2d), 710; *Patterson-Stocking, Inc.*, v. *Dunn Bros.*, 201 Minn., 308, 276 N. W., 737; *Twedell* v. *Treasure* (Mo. App.), 44 S. W. (2d), 216.

Subsequent incidents in the trial made the rejection of this tendered evidence highly prejudicial. At the close of all of the evidence, the defendant moved the court to withdraw from the consideration of the jury various specifications of negligence, including 3 and 5, and expressly referred to the language "failed and neglected to make arrangements to shut off its current." The reason given for the motion was that there was no proof that such arrangements were not made. The plaintiff opposed this motion, and reiterated his objection to the tendered testimony, and the court overruled the motion. That having been done, the court in its charge, in stating the issues, consistently included these specifications of negligence; and in its summation it told the jury if it found the defendant negligent "in one or more of the ways set forth in the plaintiff's petition," etc. "your verdict will be for the plaintiff." There being no proof on that question, the court should have granted the defendant's motion to withdraw it, but not having done that, the defendant should have had the benefit of its tendered evidence on the subject.

For this error, the judgment is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

STUART, J., concurs.

Conn, J., dissenting. The issue in the instant case is whether the negligence charged in the amended petition was the proximate cause of plaintiff's injury and damage. The amended petition of plaintiff contains nine specifications of negligence. The verdict of the jury may rest on negligence charged in one or more of the several specifications, as it is not disclosed by the record whether one only, or two or more of the alleged acts or omissions of defendant were found by the jury to be sustained by a preponderance of the evidence.

The assignment of error held to be prejudicial to the defendant was the rejection of certain testimony offered by it in relation to the alleged negligence of defendant set up in specifications 3 and 5 of the amended petition.

Plaintiff alleged, in these specifications, that defendant "failed and neglected to make arrangements to shut off its current or to shut off its current" at such times when the machinery of the construction company would reach a point near its high tension wires, although defendant had a clear view from its substation and could have and should have seen that the machinery of the construction company was in close proximity to its high tension wires and that it had actual knowledge of the proximity of the construction work to these wires.

Plaintiff did not offer any evidence in support of his charge of negligence that defendant "failed and neglected to make arrangements" to shut off its current. Notwithstanding the want of proof as to this specification, plaintiff did not ask leave to amend his petition by striking out this averment of negligence and neither did the trial court withdraw this averment from the consideration of the jury, as it might well

have done, either at the conclusion of plaintiff's evidence, or at the conclusion of all the evidence and when expressly requested so to do by the defendant.

The defendant nevertheless undertook to show that some arrangement had been made to shut off its power, by asking its witness, the general line foreman, to relate a conversation he had had prior to plaintiff's injury with Kalill of the construction company. Over the objection of plaintiff, this testimony was not received and its rejection is held to be prejudicial to the defendant.

It seems to me that the material averments of negligence in each of the specifications 3 and 5 are the alleged failure of the defendant to shut off its power as the equipment of the construction company, in the progress of the work, came in close proximity to its high tension wires. The defendant had knowledge of the character of the work and of the type of equipment employed by the construction company. A few days before, it had raised on the poles its 2,300 voltage line at this street intersection where plaintiff was injured, in anticipation of possible harmful contact being made as the construction work progressed in the direction of its high tension wires.

In view of these circumstances and the further consideration that the admission of this testimony would have resulted in opening a wide door in order to receive a conversation between two persons, neither of whom were parties to this action, and concerning which plaintiff had or shared no responsibility, I feel that the sustaining of plaintiff's objection to the admission of this evidence was within the sound discretion of the trial judge and that its rejection was not prejudicial to the defendant.

On the other hand, if this evidence were competent and if it were error to exclude it, it seems to me that no prejudice in legal contemplation could have resulted to the defendant, as it was offered on a collateral or immaterial issue and an issue upon which plaintiff had offered no evidence.

The material issue raised on specifications 3 and 5 was the alleged failure of the defendant to shut off its power, having knowledge of all the facts and circumstances relative to the progress of this construction work and the kind of equipment used, and being chargeable with the corresponding duty to exercise ordinary care which this knowledge imposed. It appears this issue was fairly submitted to the jury.

It seems to me the record shows that the parties have had a fair trial and that the judgment should be affirmed.