DECISION AND JUDGMENT ENTRY
This is an appeal from a January 28, 1999 judgment entry of the Ottawa County Municipal Court in which the court accepted a jury verdict that appellant was guilty of driving under the influence of alcohol in violation of R.C. 4511.19(A)(1) and a second judgment entry filed on the same date in which the trial court sentenced appellant for his offense. Appellant has presented three assignments of error for consideration on appeal that are:
 "1. Due to insufficient evidence regarding the completion of the HGN test, the trial court abused its discretion when giving an HGN test jury instruction.
"2. The HGN jury instruction was erroneous.
 "3. The trial court erred when not allowing appellant to testify regarding the reasons why he refused to take the breath test."
The record shows that appellant was charged in the Ottawa County Municipal Court on May 14, 1998 with a violation of R.C. 4511.19(A)(1) with the notation that he "Refused BAC". He filed a motion to suppress, which the trial court denied, and the case proceeded to trial to a jury.
At the trial, the state called the state trooper who stopped and arrested appellant to the stand. The trooper testified that shortly before midnight on May 14, 1998, he was parked on the side of the road in Ottawa County when he heard a loud muffler. He heard the muffler before he saw the pick up truck to which the muffler was attached, and he decided to stop the driver of the pick up truck for the traffic violation of driving with a loud muffler.
The trooper testified that appellant was the driver of the pick up truck. When the trooper first spoke with appellant about the loud muffler violation, he smelled alcohol on appellant's breath. He also noticed that appellant's speech was slurred. He asked appellant to get out of the pick up truck and to perform some field sobriety tests.
First, he tried to administer the horizontal gaze nystagamus test ("HGN"). He testified that the HGN test could show either that a person had a head injury or was drinking alcohol. He explained that he would move a pen from side to side while the subject followed the pen with his eyes. The officer would watch the subject's eyes to see if they jerked while they were moving from side to side. If the subject's eyes smoothly followed the movement of the pen, the subject was not under the influence of alcohol. If the subject's eyes jerked, that showed the subject was under the influence of alcohol.
The trooper said he was not able to complete the test however, because appellant could not follow the movement of the officer's pen with his eyes. The trooper testified that appellant looked more at the trooper than at the trooper's pen.
Next, he asked appellant to do the "walk and turn" test. He gave appellant nine separate instructions relating to the test, and appellant failed to follow five of the nine instructions.
Third, the trooper asked appellant to do a "finger to nose" test. Appellant missed touching his nose with his finger on his right hand on the first try, but after that he did comply with the directions.
Fourth, the officer asked appellant to perform a "one leg stand" test. The trooper said appellant did "poorly" on the test, since appellant failed to complete any of the five instructions relating to the test.
The trooper then arrested appellant for driving under the influence. He took appellant to a nearby police station and offered to let appellant take an intoxilyzer test to show that he was not driving under the influence of alcohol. Appellant refused to take the intoxilyzer test. The trooper did not recall appellant giving any reason for not taking the test.
On cross-examination, the trooper admitted that he did not see any erratic driving when he watched appellant go past him and after he followed appellant's pick up truck to pull him over for the loud muffler. He also admitted that appellant did not weave in his lane and did not speed.
At the close of the trooper's testimony, the state rested its case. Appellant made a motion for a judgment of acquittal. The trial court denied the motion. Appellant then took the stand and testified in his own behalf.
Appellant testified that he is a self-employed mechanic. On the date in question, he had worked all day on an engine for a cigarette boat that belonged to a friend. The friend invited him to go to Kelley's Island to spend the evening. He accepted the invitation, and they went to the island in his friend's boat around seven o'clock at night. When they reached the island, appellant drank two beers at the first establishment they visited. They then went to a second establishment where appellant had two more beers and ate a perch fillet dinner. He testified that he stopped drinking alcohol at 10:30 p.m.
His friend then drove the boat back home from the island, and he helped his friend put the boat on a lift, wash the boat and cover the boat. He talked with his friend for a while and then headed for home.
He admitted that his muffler was loud. He testified, however, that his driving ability was not impaired by alcohol. He said he tried to do what the trooper asked him to the best of his ability when he was performing the roadside sobriety tests. He said the trooper arrested him, handcuffed him and drove him "downtown".
The following exchanges then took place during appellant's testimony:
 "Q. Tell us what happened there regarding the alcohol testing?
 "A. He had me sit down in a chair against the wall. Another officer came out and sat to my left of the desk, and apparently doing paperwork. I believe he was probably there to be a witness.
 "I don't know what the procedure is there. Mr. Fegan was operating the machine on my right on the wall. I couldn't see what he was doing. (inaudible) was there, and he was working on it, and working on it, and working on it. And I could see his hand around the corner of the machine, and it looked like he was playing a keyboard or something.
 "After a little while, he looked up and directed his speech to the officer, and said he could not get the machine (inaudible).
"MR. SKAFF: Objection, Your Honor, hearsay.
"THE WITNESS: That is what happened.
"THE COURT: Sir, Mr. Day, when there is an objection —
 "MR. DeBACCO: It is not offered to prove the truth of the matter asserted. It is offered to prove my client's state of mind, first. And secondly, Your Honor, I don't (inaudible).
 "THE COURT: All right. It is hearsay. The jury will disregard the statement that the witness made concerning another person's statement. The objection is sustained.
 "Q. At that time (inaudible), did you observe anything that caused you concern about that breath test machine?
"A. Yes.
"Q. What was that?
 "A. The other officer said there was nothing wrong with it.
"MR. SKAFF: Objection, Your Honor.
 "THE COURT: At this time, Mr. Day, it is a warning directly to you. You are not to testify as to what another person stated at this time. Do you understand that?
"THE WITNESS: I will try.
 "THE COURT: You don't try. You don't do it. Do you understand?
"THE WITNESS: Okay.
 "THE COURT: The next time, there won't — there won't be a next time. Go ahead.
 "Q. Were you at any time after you got back when you were driving that car, were your actions, reactions, or mental processes impaired?
"A. No, they were not."
That was the close of appellant's testimony on direct examination.
After appellant finished testifying, the defense rested and the case was submitted to the jury. The court gave the jury a complete set of jury instructions that included the following provision:
 "The Horizontal Gaze Nystagmus test is a medically accepted means of determining the presence of alcohol in a person's system when the test is properly administered by a person properly trained to give that test."
Appellant did not object when the above instruction was given.
In addition, when the court asked counsel at the close of the instructions whether they had any objections or wanted any additions to be made to the instructions, both counsel said no.
The jury deliberated and returned with a guilty verdict. The court recessed for a brief time, then resumed to sentence appellant.
In support of his first and second assignments of error, appellant argues that the trial court abused its discretion when it gave the jury instruction about a HGN test, because there was "insufficient" evidence in this case to support the instruction and because the instruction was incomplete. Specifically, appellant argues that in this case, the trooper's testimony showed that the HGN test was not completed, so the trial court should not have given any instruction about the HGN test. Appellant also argues that the jury instruction on the HGN test should have included statements that poor performance on the test may also "indicate a medical problem suffered by an individual, rather than the presence of alcohol in the individual's system."
Appellee responds that appellant failed to object to the instruction at trial; therefore, appellant cannot seek review of the alleged error unless it reaches the level of plain error. Appellee says there was no plain error in this case, because the trooper's testimony showed that the trooper was unable to perform the HGN test. The jury was entitled to an instruction to explain the significance of the test and why the officer tried to give the test to appellant. The court had no obligation to give any instruction that a HGN test might indicate a physical problem, rather than the presence of alcohol in the test subject, because appellant did not present any evidence that would serve as a foundation to show that he had a physical problem that would cause him to perform poorly on the HGN test.
We agree with appellee that appellant waived the right to challenge the issue by not objecting at trial when the instruction was read. State v. Adams (1980), 62 Ohio St.2d 151,153. Furthermore, we agree that this situation does not rise to the level of plain error. See State v. Stover (1982), 8 Ohio App.3d 179,183.
Plain error exists if "substantial rights of the accused are so adversely affected as to undermine the `fairness of the guilt determining process.'" State v. Swanson (1984), 16 Ohio App.3d 375,377 (quoting State v. Gideons (1977), 52 Ohio App.2d 70,77-78). This test is not met in this case, even if we assumearguendo that the HGN test information should have been excluded from evidence and thus from the jury instructions.
In this case, the presentation of the HGN test information and the jury instruction relating to that information was harmless. The trooper's remaining testimony regarding the smell of alcohol on appellant's breath, appellant's slurred speech and appellant's poor performance on all the other field sobriety tests was sufficient to allow the jury to conclude beyond a reasonable doubt that appellant was guilty of DUI. See State v. Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus. Appellant's first and second assignments of error are not well-taken.
In support of his third assignment of error, appellant argues that the trial court erred when it barred him from testifying about why he refused to take an intoxilyzer test. Appellant says he was entitled to present testimony about the statements and actions of the police officers that led to his decision not to take the intoxilyzer test because that information was presented not for the truth of the matter asserted, but to show his state of mind. He says that based upon what he saw and heard, he believed the intoxilyzer machine was not working properly, and he decided he should not take the test. Appellee responds that unless appellant can show he is an expert witness regarding the operation of an intoxilyzer machine, his opinion testimony regarding how the machine was working is irrelevant. Appellee says appellant could not testify as an expert witness "on a technical matter".
Appellee also says that appellant could not testify about what a third party said because those statements were hearsay. Appellee says appellant should have sent subpoenas to all the third parties he believed had information that would help in his defense.
Finally, appellee says that there was no other evidence presented to support appellant's assertion that he thought the intoxilyzer machine was not working right. Appellee says that the trooper who arrested appellant testified that he could not recall appellant giving any reason for refusing to take the intoxilyzer test.
The Supreme Court of Ohio has said:
 "To constitute hearsay, two elements are needed. First, there must be an out-of-court statement. Second, the statement must be offered to prove the truth of the matter asserted. If either element is not present, the statement is not `hearsay.' Potter v. Baker (1955), 162 Ohio St. 488 [55 O.O. 389]. See, also, State v. Nabozny (1978), 54 Ohio St.2d 195, at 209 [8 O.O.3d 181], vacated on other grounds (1978), 439 U.S. 811. In State v. Thomas (1980), 61 Ohio St.2d 223, 232
[15 O.O.3d 234], this court held that testimony which explains the actions of a witness to whom a statement was directed, such as to explain the witness' activities, is not hearsay. Likewise, it is non-hearsay if an out-of-court statement is offered to prove a statement was made and not for its truth, Cassidy v. Ohio Public Service Co. (1947), 83 Ohio App. 404, 410 [38 O.O. 460],' to show a state of mind, Stewart v. State (1850), 19 Ohio 302; or to explain an act in question, Finnegan v. Metro Life Ins. Co. (App. 1958), 81 Ohio Law Abs. 417, 419-420."
"* * *
 "Accordingly, if a statement is offered for some purpose other than to prove the truth of the matter asserted, admissibility should be governed by the standards of relevancy and prejudice. Rubin, supra, at 283. The issue herein therefore is not whether the testimony was hearsay but rather whether it was relevant." State v. Maurer (1984), 15 Ohio St.3d 239, 262-263.
Applying the above standard to this case, we conclude that the trial court erred when it excluded appellant's testimony about statements he heard the officers make as hearsay. Appellant was not recounting the statements to prove they were true; therefore, the statements were not hearsay. Instead, he was offering the statements to show why he chose not to take an intoxilyzer test.
However, we conclude that the trial court's error is harmless error in this case. As we have already noted, there was sufficient other evidence presented at trial to support the jury's verdict that appellant was guilty of driving under the influence of alcohol. Appellant's explanation that he did not take the intoxilyzer test because he thought the machine was not working properly would not have altered the significance of the other evidence relating to his poor performance on the field sobriety tests, so its exclusion was not prejudicial to him.
Appellant's third assignment of error is not well-taken.
The judgment of the Ottawa County Municipal Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J.
 Melvin L. Resnick, J.
 Richard W. Knepper, J.
CONCUR.