OPINION
{¶ 1} Plaintiff-appellant, Dr. Timothy S. Knowles, appeals from a judgment of the Ohio Court of Claims granting the Civ.R. 41(B)(2) motion of defendant-appellee, The Ohio State University ("OSU"). Because the trial court committed reversible error in its evidentiary ruling regarding plaintiff's defamation claim, and it applied an incorrect standard in assessing plaintiff's breach of employment contract claim, we reverse.
 {¶ 2} Plaintiff alleges OSU breached its employment contract with plaintiff, defamed plaintiff, and denied plaintiff due process in terminating plaintiff's employment with OSU. According to the record, by letter of agreement from OSU Provost Edward Ray, dated June 9, 1999 and countersigned by plaintiff on June 15, 1999, plaintiff was hired as OSU's Vice Provost of the Office of Minority Affairs ("OMA"). The letter agreement provided, in pertinent part:
 {¶ 3} "This appointment will begin August 1, 1999 and is for a period of five years subject to the results of an annual performance review and continued acceptable performance. You will be eligible for reappointment to a second term subject to a broad-based performance review toward the end of your first term of service. Should I determine that terminating your appointment before the end of the five-year period is appropriate, severance pay of one year's cash salary will be provided."
 {¶ 4} On June 12, 2000, Larry Lewellen, the Associate Vice President of Human Resources for OSU, sent a memorandum to Provost Ray concerning complaints received from OMA staff regarding plaintiff's leadership and management of OMA. Shortly thereafter, Provost Ray informed plaintiff of the complaints and advised plaintiff a further investigation would be conducted.
 {¶ 5} Notwithstanding the pending investigation, in a letter to plaintiff dated June 21, 2000, Provost Ray advised plaintiff that Ray "treated a 3.5% raise as a signal of satisfactory performance" and "[w]ith that in mind," he was forwarding a salary increase for plaintiff of four percent. Provost Ray further stated in the letter:
 {¶ 6} "I continue to believe that you can be a great success in your position and I genuinely admire your values and your willingness to take on tough issues. I hope that we have both learned some lessons this year and that we can be even more effective partners next year.
 {¶ 7} "I know that this has been a particularly difficult year in which we have contended with labor disputes, demonstrations, public complaints about administrative salaries and job performance, while striving to make substantive progress on many fronts, including the Academic Plan and the Diversity Plan. Please know how much I have appreciated your patience, hard work and professionalism during this period." (June 21, 2000 letter from Provost Ray to plaintiff.)
 {¶ 8} On July 12, 2000, Provost Ray received a report from Lewellen regarding the results of the investigation concerning plaintiff's management and leadership of OMA. The next day, Provost Ray, together with Lewellen, met with plaintiff, advised him of the results of the investigation, and told him he must submit a letter of resignation or his employment would be terminated. Plaintiff refused to resign his position, so Provost Ray terminated his employment with OSU on July 31, 2000, with the termination to be effective immediately; plaintiff was paid one year's severance pay.
 {¶ 9} On March 27, 2001, plaintiff filed a complaint in the Court of Claims asserting breach of contract, defamation, and denial of due process by OSU. In his breach of contract claim, plaintiff contended he had satisfied all the terms and conditions for continuance of his five-year contract and OSU had breached the contract by terminating plaintiff's employment without just cause. In his defamation claim, plaintiff contended (1) OSU, through Provost Ray, had made a false oral statement to students that plaintiff had been fired from his former job at Meharry Medical College and had lied on his application to OSU, and (2) OSU had published false and defamatory newspaper articles regarding plaintiff. In his due process claim, plaintiff raised general violations of procedural due process in the manner OSU terminated plaintiff's employment.
 {¶ 10} A three-day trial was held before the Court of Claims beginning March 11, 2002. At the close of plaintiff's case-in-chief, the trial court granted OSU's motion to dismiss plaintiff's claims pursuant to Civ.R. 41(B)(2). The court's judgment entry against plaintiff was journalized on March 13, 2002. On March 19, 2002, plaintiff filed a Civ.R. 52 motion seeking findings of fact and conclusions of law. After requesting and receiving proposed findings and conclusions from the parties, the trial court on May 3, 2002 issued its own written findings of fact and conclusions of law.
 {¶ 11} Initially, with regard to plaintiff's breach of contract claim, the court found (1) the terms of the parties' agreement regarding OSU's procedures and ability to terminate plaintiff's employment are clear and unambiguous and are contained solely within the letter agreement dated June 9, 1999; (2) the express terms of the employment contract provide that plaintiff is to serve at the "sole satisfaction" of Provost Ray; (3) the contract could not be reasonably construed to provide that plaintiff's employment could be terminated only for just cause; and (4) the only limitation upon Provost Ray's ability to terminate plaintiff before five years elapsed was that OSU would pay plaintiff severance pay for one year. Given those findings, the court concluded that plaintiff had an "at-will" employment contract and "Provost Ray had the authority to terminate plaintiff at any time and for any reason which he chose." The court deferred to the Provost's decision to terminate plaintiff's employment and concluded that plaintiff had failed to prove his breach of contract claim.
 {¶ 12} Next, with regard to plaintiff's defamation claim, the court found no credible evidence in the record establishing (1) "Provost Ray communicated to a student that plaintiff had been fired from a previous position"; (2) OSU published or disseminated the newspaper articles plaintiff proffered; (3) a defamatory statement or publication of OSU caused harm to plaintiff; and (4) Provost Ray or any other OSU administrator had ill will, spite or dislike for plaintiff. The court thus concluded plaintiff failed to prove his claims of defamation.
 {¶ 13} Finally, the court concluded it was without jurisdiction to determine plaintiff's denial of due process claim, but even if the court had such jurisdiction, plaintiff did not establish a due process violation.
 {¶ 14} Plaintiff appeals, assigning the following errors:
 {¶ 15} "I. The Court abused its discretion in excluding relevant admissible evidence tending to support Plaintiff's claims. The Court abused its discretion in admitting inadmissible, irrelevant evidence which was unfairly prejudicial to the Plaintiff's claims.
 {¶ 16} "II. The Court's Findings of Fact and Conclusions of Law are against the manifest weight and/or sufficiency of the evidence presented or are clearly erroneous.
 {¶ 17} "III. The Court abused his discretion in failing to grant Plaintiff's motion for a mistrial.
 {¶ 18} "IV. The trial court demonstrated bias and antagonism towards Plaintiff and his attorneys, which constituted the trial court's abuse of discretion and material prejudice to Plaintiff's case."
 {¶ 19} The foregoing assignments of error resolve to two issues this court must address: (1) whether the trial court erred, as a matter of law, in excluding evidence of OSU's allegedly defamatory statements concerning plaintiff, and (2) whether the trial court erred, as a matter of law, in construing the employment contract and in dismissing plaintiff's breach of contract claim without determining whether OSU terminated plaintiff's employment in good faith.
 {¶ 20} A motion to dismiss pursuant to Civ.R. 41(B)(2) allows the trial court to weigh the evidence and render judgment dismissing an action if a plaintiff fails to prove its case by a preponderance of the evidence or other applicable burden of proof. Rohr v. Schafer (June 28, 2001), Franklin App. No. 00AP-1059. This court will not set aside a trial court's dismissal pursuant to Civ.R. 41(B)(2) unless it is incorrect as a matter of law or is against the manifest weight of the evidence. Id.
 {¶ 21} The first issue for review involves the trial court's decision to dismiss plaintiff's defamation claim based on the trial court's determination the record contained no evidence to establish any of the elements of defamation.
 {¶ 22} Defamation, which includes both libel and slander, is a false publication causing injury to a person's reputation, exposing the person to public hatred, contempt, ridicule, shame or disgrace, or affecting the person adversely in his or her trade or business. Sweitzer v. Outlet Communications, Inc. (1999), 133 Ohio App.3d 102, 108, citing Matalka v. Lagemann (1985), 21 Ohio App.3d 134, 136. Slander refers to spoken defamatory words, while libel refers to written or printed defamatory words. Mallory v. Ohio Univ. (Dec. 20, 2001), Franklin App. No. 01AP-278, citing Lawson v. AK Steel Corp. (1997), 121 Ohio App.3d 251,256. To establish defamation, a plaintiff must show: (1) the defendant made a false statement, (2) the statement was defamatory, (3) the statement was published, (4) the plaintiff was injured as a result of the statement, and (5) the defendant acted with the required degree of fault. Sweitzer, supra.
 {¶ 23} Actionable defamation falls into two categories, defamation per quod or per se. McCartney v. Oblates of St. Francis deSales (1992),80 Ohio App.3d 345, 353; Mallory, supra. In defamation per quod, a publication is merely capable of being interpreted as defamatory, and the plaintiff must allege and prove damages. Dodley v. Budget Car Sales, Inc. (Apr. 20, 1999), Franklin App. No. 98AP-530.
 {¶ 24} To constitute defamation per se, the "words must be of such a nature that courts can presume as a matter of law that they tend to degrade or disgrace the person of whom they are written or spoken, or hold him up to public hatred, contempt or scorn." Moore v. P.W. Publishing Co. (1965), 3 Ohio St.2d 183, 188, certiorari denied (1966),382 U.S. 978, 86 S.Ct. 549. A statement will be considered defamation per se if the statement tends to injure a person in his or her trade, profession, or occupation. Becker v. Toulmin (1956), 165 Ohio St. 549,553-554; McCartney, supra, at 353; Dodley, supra. When a statement is found to be defamation per se, both damages and actual malice are presumed to exist. Dodley, supra, citing Westropp v. E.W. Scripps Co. (1947), 148 Ohio St. 365, paragraph four of the syllabus; King v. Bogner (1993), 88 Ohio App.3d 564, 567-568; and McCartney, supra, at 354. Whether a statement is defamation per se is a question of law that an appellate court properly may determine. Becker at 554; DeMuesy v. Haimbaugh (Dec. 31, 1991), Franklin App. No. 91AP-212.
 {¶ 25} Here, plaintiff had two bases for his defamation claim. The first, which plaintiff contends is slander per se, is premised on a statement Provost Ray purportedly made at a meeting with students; Ray allegedly told the students, falsely, that plaintiff had been fired from his previous job at Meharry Medical College and had lied on his employment application to OSU. The second, which plaintiff contends is libel per se, is premised on statements in a newspaper article allegedly first published in the Columbus Post newspaper and then allegedly copied and republished by OSU in an Ohio State News Digest publication OSU purportedly disseminated on July 24, 2000. The newspaper article allegedly reported that plaintiff was "under investigation for allegations of mismanagement, inappropriate communication with staff, harassment, retaliatory behavior and violation of other University policy."
 {¶ 26} Initially considering plaintiff's oral defamation claim, we note that the defamatory statement Provost Ray allegedly made, if proven to have been made, would constitute slander per se because the statement tends to injure plaintiff's professional reputation. Dodley, supra; McCartney at 353. As slander per se, damages and malice would be presumed and need not be proven. Dodley; King; McCartney, supra.
 {¶ 27} With regard to that alleged slander, evidence was presented at trial that after plaintiff's employment was terminated, Provost Ray attended meetings with OMA staff and OSU students to discuss how a search should be conducted to fill the position of Vice Provost of OMA. On questioning by OSU at trial, Provost Ray denied stating at the student meeting that plaintiff had been fired from Meharry Medical College before assuming his position at OSU, but Provost Ray acknowledged such a statement would be false.
 {¶ 28} To rebut Provost Ray's testimony denying he told OSU students that plaintiff had been fired from his job at Meharry Medical College before coming to OSU, plaintiff presented testimony from Love Ali, a former OSU student. Ali testified she was present at a meeting with 10 to 12 other OSU students where Provost Ray addressed the students regarding OSU's firing plaintiff and OSU's search for a replacement. To establish that Provost Ray made a defamatory statement concerning plaintiff, plaintiff repeatedly questioned Ali about what she heard Provost Ray say at the meeting regarding plaintiff's firing, but at every question the trial court sustained defendant's objection without explanation, apparently excluding the testimony on the basis of hearsay. According to plaintiff's subsequent proffer, Ali would have testified that Provost Ray announced to the students at the meeting that plaintiff had been terminated because OSU had discovered plaintiff lied on his employment application and had been fired by Meharry Medical College.
 {¶ 29} Plaintiff moved for a mistrial based on the trial court's excluding Ali's testimony concerning the defamatory statement she allegedly heard. Plaintiff argued that the trial court's rulings prohibited plaintiff from offering the very evidence on which his defamation claim is based. The trial court denied plaintiff's motion without comment.
 {¶ 30} On appeal, plaintiff asserts the trial court erred in precluding Ali's testimony about the defamatory statement she purportedly heard Provost Ray make. Plaintiff further contends the court's rulings materially prejudiced him: plaintiff was unable to establish his defamation claim without admission of the defamatory statement that formed the basis of his claim.
 {¶ 31} A trial court has broad discretion in the admission or exclusion of evidence, and we will not reverse the trial court's judgment absent a clear showing that the court abused its discretion in a manner that materially prejudiced plaintiff. Staton v. Miami Univ. (Mar. 27, 2001), Franklin App. No. 00AP-410, citing State v. Hymore (1967),9 Ohio St.2d 122, certiorari denied, Hymore v. Ohio (1968), 390 U.S. 1024,88 S.Ct. 1409. Here, however, the trial court abused its discretion in excluding evidence of the defamatory statement Provost Ray allegedly made because the proffered statement not only was not hearsay, but was directly relevant and admissible to prove plaintiff's oral defamation claim. The trial court's refusal to admit the evidence materially prejudiced plaintiff's presentation of his oral defamation claim, necessitating a reversal of the trial court's judgment.
 {¶ 32} Evid.R. 801(C) provides that "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" is inadmissible hearsay. However, a statement is not hearsay if it is offered to prove merely that the declarant made the statement, and not to prove the truth of the statement. State v. Maurer (1984), 15 Ohio St.3d 239, 262, citing Cassidy v. Ohio Public Service Co. (1947), 83 Ohio App. 404, 410. Here, plaintiff was not attempting to prove that the statements Provost Ray purportedly made were true, but only that Ali was present at the student meeting and heard Provost Ray make, or "publish," the statements at issue.
 {¶ 33} "`Where the fact that a particular statement was made is of itself a relevant fact, regardless of the truth or falsity of such statement, the statement is admissible in evidence as an independently relevant fact.'" State v. Sheppard (1955), 100 Ohio App. 345, 387, quoting 31 C.J.S., Evidence, 988, Section 239, affirmed (1956),165 Ohio St. 293, certiorari denied, 352 U.S. 910, 77 S.Ct. 118. Moreover, "`[w]here the utterance of specific words is itself a part of the details of the issue under the substantive law and the pleadings, their utterance may be prove[d] without violation of the hearsay rule because they are not offered to evidence the truth of the matter that may be asserted therein.'" Cassidy, supra, quoting with approval from 6 Wigmore, Evidence (3 Ed. 1940) 185, Section 1770.
 {¶ 34} Because evidence of the defamatory statement Provost Ray allegedly made was offered to show only that Provost Ray made the statement, not that the statement was true or false, the proffered testimony was not inadmissible hearsay. See Taylor v. Lenio (June 20, 1985), Cuyahoga App. No. 49300, citing McCormick, Evidence (3 Ed. 1984) 732-733, Section 249 (determining the testimony of coworkers who would testify from personal knowledge about the defamatory statements they allegedly heard would not be excluded as hearsay).
 {¶ 35} Moreover, because Provost Ray undisputedly was at the meeting within the scope of his agency or employment with OSU at the time he allegedly made the defamatory statement, Ali's proffered testimony was admissible as evidence of a defamatory statement made by a party-opponent. Evid.R. 801(D)(2)(d). See LeGals, Inc. v. D-K Assoc., Inc. (June 15, 1989), Cuyahoga App. No. 55381 (holding that an affidavit of a person who was present at a meeting where she reportedly heard an individual defendant, acting as a representative of the corporate defendant, make defamatory statements concerning the plaintiff is admissible evidence that the alleged defamatory statements were made).
 {¶ 36} Finally, the proffered evidence also was admissible to refute and impeach Provost Ray's denial that he made the defamatory statement concerning plaintiff. A statement offered for impeachment purposes is not hearsay because it is not presented to prove the truthfulness of the statement. State v. Kline (1983), 11 Ohio App.3d 208,211.
 {¶ 37} The improper exclusion of the evidence of the defamatory statement Provost Ray allegedly made caused material prejudice to plaintiff because plaintiff could not proceed on his defamation claim without the statement upon which the claim was based. Because plaintiff has suffered material prejudice, we reverse the trial court's judgment as to plaintiff's defamation claims. Issues raised regarding the authenticity and admissibility of the newspaper articles, exhibits 62 and 82, on which plaintiff bases his written defamation claim may be addressed on remand, where plaintiff will have an opportunity to lay an appropriate foundation for admission of the articles.
 {¶ 38} The second issue for this court's review is the trial court's dismissal of plaintiff's breach of contract claim.
 {¶ 39} Plaintiff asserts the trial court erred in finding the employment contract was a subjective satisfaction contract under which plaintiff was to serve at the "sole satisfaction" of Provost Ray and could be terminated for any reason of the Provost's choosing. Plaintiff contends the contract instead provided for "just cause" termination because it was for a term of five years and was subject to certain performance criteria. Plaintiff asserts the trial court erred to plaintiff's material prejudice (1) by dismissing plaintiff's breach of contract claim without, at the least, making a finding of "good faith" on the part of OSU in terminating plaintiff's employment, and (2) by excluding parol evidence to explain the contract's performance criteria, which are not defined in the contract and which plaintiff contends are ambiguous.
 {¶ 40} The employment contract at issue contains a "satisfaction clause," so that plaintiff's continued employment was contingent on his satisfactory performance in his position as Vice Provost of OMA. See Hutton v. Monograms Plus, Inc. (1992), 78 Ohio App.3d 176, 181. Specifically, plaintiff had an appointment for a period of five years "subject to the results of an annual performance review and continued acceptable performance" and "[s]hould [Provost Ray] determine that terminating [plaintiff's] employment before the end of the five-year period is appropriate, severance pay of one year's cash salary [would] be provided."
 {¶ 41} Courts have divided "satisfaction clauses" into two categories, subjective and objective. Id. "Absent express contract language, courts have looked to the nature of the contract as an indicator of which standard governs. In these cases, there still is no clear line of demarcation. Generally, the subjective standard applies to contracts involving matters of * * * management, regardless of financial impact. The objective standard of the reasonable person is generally applied where commercial or financial matters are involved." Id. at 184.
 {¶ 42} The court in Hutton further noted that "[t]he fact that a contract contains a general satisfaction clause, without more, does not mandate the application of a subjective standard." Id. Rather, "[w]hich standard applies in a given transaction is a matter of the actual or constructive intent of the parties, which, in turn, is a function of the express language of the contract." Id. at 181.
 {¶ 43} Where a subjective standard is applied to determine whether a party is "satisfied," the test is whether the party is actually satisfied. Id. "Although application of a subjective standard to a satisfaction clause would seem to give the obligor virtually unlimited latitude to avoid his duty of performance, such is not the case. In these situations, courts impose the limitation that the obligor act in good faith." Id.
 {¶ 44} Here, the trial court determined plaintiff's employment contract was to be performed to the "sole satisfaction" of Provost Ray, who the court found could terminate plaintiff's employment for any reason and without limitation except to pay plaintiff one year's salary as severance. Although the contract did not state that the subjective standard applies, the trial court clearly construed the contract as a subjective, rather than objective, satisfaction contract. Even if the trial court correctly construed plaintiff's contract as requiring Provost Ray's subjective satisfaction, the court nevertheless erred in failing also to determine whether Provost Ray acted in "good faith" in concluding plaintiff had not performed satisfactorily. Id.
 {¶ 45} The Ohio Supreme Court has stated that "in all cases, a `good faith determination' requires at least to some extent that the determination be informed." Worth v. Huntington Bancshares, Inc. (1989),43 Ohio St.3d 192, 197. We generally presume that the intent of the parties can be found in the written terms of their contract. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, 638. Here, the constructive intent of the parties, as expressed in the language of the contract, suggests that an informed, or good faith, decision by Provost Ray to terminate plaintiff's employment is one that is made "subject to the results of an annual performance review and continued acceptable performance." We are unable to discern whether Provost Ray made his decision to terminate plaintiff's employment in "good faith" because the trial court improperly precluded evidence that would have explained what constituted a satisfactory annual performance review and acceptable performance pursuant to the contract.
 {¶ 46} Accordingly, the trial court erred, as a matter of law, in concluding that OSU did not breach plaintiff's employment contract where the trial court did not find that OSU had acted in good faith, under the terms of the contract, in terminating plaintiff's employment. As a result, we reverse the trial court's judgment on the breach of contract claim. Plaintiff's first and second assignments of error are sustained to the extent indicated, rendering plaintiff's remaining assignments of error moot at this time.
 {¶ 47} Having sustained in part plaintiff's first and second assignments of error, rendering plaintiff's third and fourth assignments of error moot, we reverse the judgment of the Ohio Court of Claims and remand this case for further proceedings consistent with this opinion. In light of the nature of the errors on which reversal is predicated, it may be prudent for a different branch of the court to hear the case on remand.
Judgment reversed and case remanded.
BOWMAN and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.